Laura G. Ferguson (*pro hac vice*)
lferguson@milchev.com
Dawn E. Murphy-Johnson (*pro hac vice*)
dmurphyjohnson@milchev.com
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Black Lives Matter Plaza
Washington, DC 20006
Tel: 202-626-5800
Fax: 202-626-5801

Carolyn A. Knox (SBN 181317)
carolyn.knox@ogletree.com
Andrew M. Massara (SBN 282913)
andrew.massara@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Tel: 415-442-4810
Fax: 415-442-4870

*Counsel for Defendants Western Digital Corporation and*
*Western Digital do Brasil Comércio e Distribuição de Produtos de Informática Ltda*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| AIRTON AMORIM DE ALMEIDA,<br><br>              Plaintiff,<br><br>       v.<br><br>WESTERN DIGITAL CORPORATION,<br><br>              Defendant. | Case No. 3:20-cv-4735-RS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          June 10, 2021<br>Time:         1:30 p.m.<br>Courtroom:  3 |

1

**TABLE OF CONTENTS**

2    NOTICE OF MOTION AND MOTION TO DISMISS ...................................................... 1

3    RELIEF SOUGHT........................................................................................................... 1

4    MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

5    INTRODUCTION ............................................................................................................ 1

6    FACTUAL ALLEGATIONS ........................................................................................... 2

7        A.    The Parties ................................................................................................ 2

8
         B.    Almeida's Concerns About Third Party Digitron in 2012 and
9              Alleged SEC and Internal Investigations of Those Concerns in
10             2016.......................................................................................................... 3

11       C.    Almeida's Participation in a Phishing Scam and Subsequent
               Resignation ............................................................................................... 5
12
         D.    Procedural History ................................................................................... 6
13
     ARGUMENT ................................................................................................................... 7
14
     I.   THE COURT SHOULD DISMISS ALL CLAIMS AGAINST WD BRAZIL
15        FOR LACK OF PERSONAL JURISDICTION ....................................................... 7

16       A.    WD Brazil Is Not Subject to General Jurisdiction ................................... 8

17       B.    WD Brazil Is Not Subject to Specific Jurisdiction ................................ 10

18   II.  THE COURT SHOULD DISMISS ALMEIDA'S FEDERAL DODD-FRANK
19        RETALIATION CLAIM (COUNT ONE) ............................................................. 12

20       A.    The Dodd-Frank Framework ................................................................. 13

21       B.    Count One Should Be Dismissed Because Almeida's Dodd-Frank
               Claim  Is Impermissibly Extraterritorial .............................................. 14
22
               1.    Section 78u-6(h)(1) Is Not Intended to Apply
23                   Extraterritorially......................................................................... 15

24             2.    This Case Does Not Involve a Domestic Application of
25                   § 78u-6(h)(1) ............................................................................... 17

26       C.    Regardless, Count One Should Be Dismissed Because the
               Amended Complaint Fails to State a Dodd-Frank Retaliation
27             Claim........................................................................................................ 19

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

III.   THE COURT SHOULD DISMISS ALMEIDA'S STATE-LAW CLAIMS
       (COUNTS TWO AND THREE) ........................................................................... 25

       A.    The Court Should Decline to Exercise Supplemental Jurisdiction
             Over Almeida's State-Law Claims ........................................................ 25

       B.    The Court Should Dismiss Almeida's State-Law Claims for
             Alternative Reasons .............................................................................. 26

             1.    Almeida's California Claims Are Impermissibly
                   Extraterritorial .......................................................................... 26

             2.    Almeida's California Claims Fail to State a Claim Upon
                   Which Relief Can Be Granted .................................................... 28

CONCLUSION ........................................................................................................... 30

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alabado v. French Concepts, Inc.*,
    No. 15-cv-2830, 2016 WL 5929247 (C.D. Cal. May 2, 2016).........................................27, 28

5

*Archuleta v. Corr. Corp. of Am.*,
    No. 15-cv-1608, 2021 WL 308593 (D. Nev. Jan. 29, 2021) ...................................................22

6

7

*Asadi v. G.E. Energy (USA), LLC*,
    No. 12-cv-345, 2012 WL 2522599 (S.D. Tex. June 28, 2012),
    *aff'd on other grounds*, 720 F.3d 620 (5th Cir. 2013) .............................................16, 18, 26

8

9

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987).................................................................................................................12

10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................13

11

12

*Balintulo v. Daimler AG*,
    727 F.3d 174 (2d Cir. 2013).....................................................................................................17

13

14

*Banko v. Apple Inc.*,
    20 F. Supp. 3d 749 (N.D. Cal. 2013) (Seeborg, J.).............................................................19, 20

15

16

*In re Boon Glob. Ltd.*,
    923 F.3d 643 (9th Cir. 2019) .....................................................................................................9

17

18

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................................................11

19

*Caracal Enters. LLC v. Suranyi*,
    No. 16-cv-05073, 2017 WL 446313 (N.D. Cal. Feb. 2, 2017) (Seeborg, J.).........................11

20

21

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988).................................................................................................................25

22

23

*Cellucci v. O'Leary*,
    No. 19-cv-2752, 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020) ...........................19, 20, 23, 24

24

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001).................................................................................................................24

25

26

*Cohen v. Fred Meyer, Inc.*,
    686 F.2d 793 (9th Cir. 1982) ...................................................................................................23

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**Page(s)**

**Cases**

*Curtis v. Cafe Enters., Inc.*,
     No. 15-cv-32, 2016 WL 6916786 (W.D.N.C. Nov. 21, 2016),
     *aff'd*, 715 F. App'x 268 (4th Cir. 2017)....................................................................... 22

*Daimler AG v. Bauman*,
     571 U.S. 117 (2014)....................................................................................................... 8, 9

*Depot, Inc. v. Caring for Montanans, Inc.*,
     915 F.3d 643 (9th Cir. 2019) ......................................................................................... 13

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
     968 P.2d 539 (Cal. 1999) ............................................................................................... 28

*Digit. Realty Tr., Inc. v. Somers*,
     138 S. Ct. 767 (2018)........................................................................................... 13, 16, 20

*Erhart v. BofI Holding, Inc.*,
     269 F. Supp. 3d 1059 (S.D. Cal. 2017).................................................................... 21, 22

*Erhart v. Bofi Holding, Inc.*,
     No. 15-cv-02287, 2016 WL 5369470 (S.D. Cal. Sept. 26, 2016).................................. 21, 22

*Ferdik v. Bonzelet*,
     963 F.2d 1258 (9th Cir. 1992) ........................................................................................ 2

*Fisher v. San Pedro Peninsula Hosp.*,
     214 Cal. App. 3d 590 (1989) .......................................................................................... 30

*Fitzpatrick v. Milwaukee Sch. of Eng'g*,
     No. 18-cv-0541, 2020 WL 7060133 (E.D. Wis. Dec. 2, 2020) ............................... 20, 21

*Garcia-Brower v. Premier Auto. Imps. of CA, LLC*,
     55 Cal. App. 5th 961 (2020) ........................................................................................... 30

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
     564 U.S. 915 (2011)........................................................................................................ 8

*Govan v. Sec. Nat'l Fin. Corp.*,
     502 Fed. App'x 671 (9th Cir. 2012) ............................................................................... 24

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
     466 U.S. 408 (1984)........................................................................................................ 8

*Iconlab, Inc. v. Bausch Health Cos., Inc.*,
     828 F. App'x 363 (9th Cir. 2020) ................................................................................... 10

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page(s)**

**Cases**

*InfoSpan, Inc. v. Emirates NBD Bank PJSC,*
    903 F.3d 896 (9th Cir. 2018) ................................................ 7

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ............................................................. 7

*Karasek v. Regents of Univ. of Cal.,*
    956 F.3d 1093 (9th Cir. 2020) ................................... 2, 12, 13

*Kiobel v. Royal Dutch Petroleum Co.,*
    569 U.S. 108 (2013) ................................................ 15, 16, 17

*Lawrence v. IBM Corp.,*
    No. 12-cv-8433, 2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017) ............................. 22

*Lee v. Eden Med. Ctr.,*
    690 F. Supp. 2d 1011 (N.D. Cal. 2010) .................................. 25

*Liu Meng-Lin v. Siemens AG,*
    763 F.3d 175 (2d Cir. 2014) .................................... *passim*

*Marx v. Storage Tech. Corp.,*
    Nos. B178202, B182100, 2006 WL 3222499 (Cal. Ct. App. Nov. 8, 2006) ........................ 29

*Miglani v. Edwards Lifesciences, LLC,*
    No. 17-cv-418, 2018 WL 6265007 (C.D. Cal. Jan. 8, 2018) ................................. 19, 23, 24

*Morrill v. Scott Fin. Corp.,*
    873 F.3d 1136 (9th Cir. 2017) .................................... *passim*

*Morrison v. Nat'l Austl. Bank Ltd.,*
    561 U.S. 247 (2010) ................................... 12, 15, 18, 19

*Mujica v. AirScan Inc.,*
    771 F.3d 580 (9th Cir. 2014) ................................................ 17

*N. Alaska Salmon Co. v. Pillsbury,*
    162 P. 93 (Cal. 1916) .......................................................... 27

*Nielsen v. AECOM Tech. Corp.,*
    762 F.3d 214 (2d Cir. 2014) .............................................. 21

*Nieves v. City of Oakland,*
    No. A144592, 2016 WL 6879282 (Cal. Ct. App. Nov. 22, 2016) ......................... 29

**Page(s)**

**Cases**

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................. 28

*Patten v. Grant Joint Union High Sch. Dist.*,
   134 Cal. App. 4th 1378 (2005) ......................................................................... 29

*Price v. UBS Fin. Servs., Inc.*,
   No. 17-cv-01882, 2017 WL 5667994 (D.N.J. Nov. 27, 2017) ............................ 19

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ..................................................................... 8, 9, 10

*Reyher v. Grant Thornton, LLP*,
   262 F. Supp. 3d 209 (E.D. Pa. 2017) ................................................................ 26

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   136 S. Ct. 2090 (2016) ................................................................................ 15, 17

*Rocheleau v. Microsemi Corp.*,
   680 Fed. App'x 533 (9th Cir. 2017) ................................................................. 22

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ........................................................................... 26

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................... 11

*Suarez v. Bank of Am. Corp.*,
   No. 18-cv-01202, 2018 WL 3659302 (N.D. Cal. Aug. 2, 2018) ........................ 28

*Sullivan v. Oracle Corp.*,
   254 P.3d 237 (Cal. 2011) ................................................................................. 28

*Swan v. Bank of Am.*,
   360 Fed. App'x 903 (9th Cir. 2009) ................................................................. 24

*Tasadfoy v. Ruggiero*,
   365 F. Supp. 2d 542 (S.D.N.Y. 2005) ............................................................... 25

*Thomas v. Tyco Int'l Mgmt. Co.*,
   416 F. Supp. 3d 1340 (S.D. Fla. 2019) ................................................. 19, 23, 24

*Turner v. City & Cnty. of S.F.*,
   892 F. Supp. 2d 1188 (N.D. Cal. 2012) ............................................................ 29

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**Page(s)**

**Cases**

*Ulrich v. Moody's Corp.*,
  721 F. App'x 17 (2d Cir. 2018) ................................................................ 18

*Ulrich v. Moody's Corp.*,
  No. 13-cv-08, 2014 WL 12776746 (S.D.N.Y. Mar. 31, 2014)............................ 16

*United States v. Hussain*,
  972 F.3d 1138 (9th Cir. 2020) ........................................................ 15, 17

*Vantage Mobility Int'l LLC v. Kersey Mobility LLC*,
  836 F. App'x 496 (9th Cir. 2020) ............................................................ 11

*Verble v. Morgan Stanley Smith Barney, LLC*,
  148 F. Supp. 3d 644 (E.D. Tenn. 2015), *aff'd*, 676 F. App'x 421 (6th Cir.
  2017) ............................................................................................. 26

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ............................................................... 24

*Ward v. United Airlines, Inc.*,
  466 P.3d 309 (Cal. 2020) ..................................................................... 28

*Whalen v. McMullen*,
  907 F.3d 1139 (9th Cir. 2018) ............................................................... 25

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ............................................................... 10

*Wood v. iGATE Techs., Inc.*,
  No. 15-cv-799, 2016 WL 3548410 (N.D. Cal. June 30, 2016)........................... 27

**Statutes**

15 U.S.C. § 78u-6 ................................................................. *passim*

15 U.S.C. § 78aa ........................................................................ 16

15 U.S.C. § 78j.......................................................................... 15

28 U.S.C. § 1367.............................................................. 1, 25, 26

Cal. Lab. Code § 98.6 ............................................................ *passim*

Cal. Lab. Code § 1102.5 ................................................ 26, 27, 28, 29

Cal. Lab. Code §§ 1102.5–1105 ................................................... 7

**Other Authorities**

17 C.F.R. § 240.21F-2 ................................................................................ 14, 20, 21

Fed. R. Civ. P. 4 .......................................................................................... 11

Fed. R. Civ. P. 12 ..................................................................................... 1, 12

S. Rep. No. 111-176 (2010) .......................................................................... 13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on June 10, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg, in the San Francisco Courthouse of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94012, Defendants Western Digital Corporation ("WDC") and Western Digital do Brasil Comércio e Distribuição de Produtos de Informática Ltda ("WD Brazil") will move and hereby move, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), Rule 12(b)(6), and 28 U.S.C. § 1367(c)(3), to dismiss Plaintiff Airton Amorim de Almeida's Amended Complaint (ECF No. 31).

## RELIEF SOUGHT

WD Brazil seeks an order pursuant to Rule 12(b)(2), dismissing all of Almeida's claims against it for lack of personal jurisdiction.

Pursuant to Rule 12(b)(6), Defendants WDC and WD Brazil seek an order dismissing Almeida's claim asserting whistleblower retaliation in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u–6(h), because the claim is impermissibly extraterritorial and otherwise fails to state a claim upon which relief can be granted.  Defendants also request that, after dismissing Almeida's federal anchor claim, the Court exercise its discretion pursuant to 28 U.S.C. § 1367(c)(3) and decline to exercise supplemental jurisdiction over Almeida's two remaining claims, both of which invoke California state law.  In the alternative, Defendants asks that the Court dismiss Almeida's state-law claims for failure to state a claim upon which relief can be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Almeida, a Brazilian citizen who lives and works in Brazil, claims that he was fired (in Brazil) in retaliation for being a whistleblower.  Almeida has named as a defendant his Brazilian employer, WD Brazil.  This Court, however, lacks personal jurisdiction over WD Brazil. Perhaps suspecting as much, Almeida has also brought claims against California-based WDC,

1    the ultimate parent company of WD Brazil and his purported "joint employer[]."  Am. Compl.

2    ¶ 8, ECF No. 31.  But the Amended Complaint (like the Initial Complaint before it) fails to state

3    a claim against either defendant on any of Almeida's legal theories.

4          In brief, Almeida alleges without factual support that in 2012, around the time he was

5    hired by WD Brazil, he became "concerned" that a third party, Digitron, "Defendants'

6    Manufacturing Contractor in Brazil[,] . . . was defrauding and/or bribing the Brazilian tax

7    authority to overlook misrepresentations relating to finances."  Id. ¶ 15.  Four years later, in

8    2016, Almeida purportedly submitted a Tip, Complaint, or Referral ("TCR") to the U.S.

9    Securities and Exchange Commission ("SEC").  Id. ¶ 23.

10         In October 2017, Almeida responded to a phishing scam, which resulted in WD Brazil

11   being defrauded $2 million.  Id. ¶¶ 38–50.  "[I]n the wake of [the] phishing scam," Almeida

12   alleges he "contemplated resignation."  Id. ¶ 68.  According to the Amended Complaint, in late

13   November or early December 2017, Almeida tendered a "speculative resignation."  Id. ¶¶ 68–

14   71.  The Amended Complaint alleges that Almeida's employment ultimately ended on

15   December 15, 2017 by "Mutual Agreement."  Id. ¶¶ 73–74.

16         Based on the foregoing, the Amended Complaint asserts a violation of Dodd-Frank's

17   whistleblower anti-retaliation provision, 15 U.S.C. § 78u-6(h), and alleges that the Defendants

18   violated two California laws.  The Amended Complaint is fatally defective, however, and

19   should be dismissed.

20                              **FACTUAL ALLEGATIONS**[1]

21   **A.      The Parties**

22         The relevant conduct alleged in the Amended Complaint all took place in Brazil.

23   Plaintiff Almeida is a citizen of Brazil, and the Amended Complaint arises out of Almeida's

24   _____

25   [1] The allegations in Almeida's Amended Complaint do not differ considerably from those in the Initial
     Complaint.  Although WDC described the Initial Complaint's allegations its March 10, 2021 motion to
26   dismiss (ECF No. 30), Defendants discuss them again here for the convenience of the Court and because
     "the original pleading no longer performs any function and is treated thereafter as nonexistent."  *Ferdik*
27   *v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (internal quotation marks omitted).  Defendants do not
     concede the veracity of Almeida's allegations, which must be accepted as true for purposes of this
28   motion.  *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1099 (9th Cir. 2020).

employment in Brazil, where he worked as "Defendants' Latin America Finance Director." Am. Compl. ¶¶ 4, 11–12, ECF No. 31.  Almeida asserts that he was "hired directly by WDC to work out of Brazil on WDC's behalf," *id.* ¶ 12, and claims that pursuant to his employment contract he "was to report directly to WDC Vice President of Finance Joseph Carrillo, who is based in California." *Id.* ¶ 13.  His own allegations make clear, however, that he was supervised by Senior Director Graham Holmes.  *See*, *e.g.*, *id.* ¶¶ 42, 51, 64, 69, 73, 76.  The Amended Complaint is conspicuously silent on where (geographically) Holmes works.

Defendant WD Brazil is a Brazilian corporation "existing by the virtue and laws of the country of Brazil." *Id.* ¶ 7.  The Amended Complaint asserts that WD Brazil is "fully owned and operated by WDC," and is "completely manage[d] and operate[d]" by WDC. *Id.* ¶¶ 9–10. Defendant WDC is a U.S. corporation with its principle place of business in San Jose, California. *Id.* ¶ 5.  As a publicly traded company, WDC is "subject to rules and regulations promulgated by the [SEC]." *Id.* ¶ 6.

### B. Almeida's Concerns About Third Party Digitron in 2012 and Alleged SEC and Internal Investigations of Those Concerns in 2016

In October 2010, WDC entered into a contract with a company called Digitron, which was "Defendants' Manufacturing Contractor in Brazil for assembling and selling Defendants' Hard Disk Drives." *Id.* ¶¶ 14–15.  Sometime in "early 2012," Almeida (who was hired as Latin America Finance Director in February 2012) became "concerned that Digitron . . . was defrauding and/or bribing the Brazilian tax authority to overlook misrepresentations relating to finances." *Id.* ¶¶ 11, 15.  Almeida "was further concerned" that Digitron's conduct put WDC and WD Brazil "at risk" and "in-turn," put "Defendants' investors" at risk. *Id.* ¶ 15.

The Amended Complaint does not provide any specifics about Digitron's purported misconduct, other than to allege concern that Digitron was not compliant with a tax-incentive program offered by Brazil for certain Brazilian goods, including hard disk drives, that meet Brazilian Basic Productive Process ("PPB") requirements.  *See id.* ¶ 21.  Almeida "believed . . . that Defendants were complicit in Digitron's activities and, therefore, were susceptible to

1    penalties." *Id.* ¶ 16.  Notably, the Amended Complaint fails to allege any conduct by either

2    Defendant that would demonstrate their supposed "complicity"; Almeida's suspicion is based

3    solely on "the integrated relationship between the parties."  *Id.*

4          On June 6, 2016—more than *four years* after becoming concerned about Digitron's

5    alleged misconduct—Almeida allegedly and anonymously sent an email to U.S. company

6    executives from the email address "westerndigital.fcpa@gmail.com."  *Id.* ¶¶ 20–21.  The

7    Amended Complaint offers no explanation why Almeida waited so long.  The 2016 anonymous

8    email stated:  "The issues I am raising in this notification are very serious for WD because if

9    Digitron is found to be non-compliant for the PPB tax program, then WD's potential exposure

10   to the Brazilian government and [Original Equipment Manufacturers] could be massive."  *Id.*

11   ¶ 21; *see also id.* ¶ 22 (noting Almeida's belief that "unpaid or underpaid taxes . . . could harm

12   both WDC and Digitron").

13         Without elaboration, Almeida also alleges that, "[a]t all times material," he made

14   "multiple internal complaints relating to his concerns," including to Joseph Carrillo.  *Id.* ¶ 18.

15   The Amended Complaint does not indicate whether Almeida's internal complaints also were

16   anonymous, whether they alleged any wrongdoing by WDC or WD Brazil, or what response

17   Almeida received, although Almeida claims that Carrillo "took no reasonable or immediate

18   action."  *Id.*

19         Ten days after sending his anonymous "westerndigital.fcpa" email, on June 16, 2016,

20   Almeida submitted a TCR to the SEC, *id.* ¶ 23, the substance of which is not described in the

21   Amended Complaint, but purportedly "incorporated and is based on" the complaints Almeida

22   made internally, *id.* ¶ 25, and appears to relate to "Defendants' dealings with Digitron."  *Id.*

23   ¶ 29.  According to the Amended Complaint, in October 2016, "the SEC notified Defendants

24   that a TCR had been filed against them and that the SEC was launching an investigation . . . ."

25   *Id.*  Almeida supplemented his TCR in mid-October 2016.  *Id.* ¶ 31.  The Amended Complaint

26   does not provide any further information about the SEC's investigation.  Almeida does not

27   allege he was interviewed by the SEC, and, even now, four years after the SEC launched its

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  investigation, he does not allege the SEC took any action in response to the TCR.  Almeida also

2  claims he provided the TCR to the Foreign Corrupt Practices Act Unit at the U.S. Department of

3  Justice.  *Id.* ¶ 24.  The Amended Complaint does not allege that this unit pursued Almeida's

4  claims.

5        Meanwhile, in July 2016, Defendants began to investigate Almeida's June 2016

6  anonymous email regarding Digitron.  *Id.* ¶ 27.  According to the Amended Complaint,

7  "Defendants hired the USA based law firm Gibson Dunn, based in Irvine, California, to conduct

8  the investigation," which "was handled by Defendants' United States offices, by United States

9  citizens, based in California."  *Id.* ¶¶ 27–28.  As part of the internal investigation, "WDC sent

10  representatives from the United States to Brazil to interview Plaintiff and 3 other individual

11  employees."  *Id.* ¶ 32.  When the interviews took place (in November 2016), "Defendants had

12  around 15 employees working out of Brazil."  *Id.* ¶ 34.  Almeida, who claims to have been the

13  "only employee with the exposure and knowledge to submit the facts outlined in the anonymous

14  e-mail," was interviewed for three hours.  *Id.* ¶¶ 34–35.  Solely on this basis, the Amended

15  Complaint asserts that "Defendants had actual and/or constructive knowledge that Plaintiff was

16  the whistleblower."  *Id.* ¶ 37.  The Amended Complaint does not explain how Almeida's

17  anonymous email expressing concerns about supposed wrongdoing by third party Digitron made

18  him a "whistleblower" as to WDC, or even as to WD Brazil.

19        **C.    Almeida's Participation in a Phishing Scam and Subsequent Resignation**

20        The Amended Complaint does not allege any relevant events between November 2016,

21  when WD Brazil's employees, including Almeida, were interviewed, and September 2017,

22  when Almeida was duped into participating in a phishing scam.  *Id.* ¶¶ 38–50.  In response to a

23  phishing email, Almeida wired WD Brazil funds to a "third-party supplier in Turkey."  *Id.* ¶ 41.

24  As a result, "Defendants were defrauded approximately $2 million."  *Id.* ¶ 50.

25        While the company was investigating the phishing scam, *id.* ¶ 54, Almeida began

26  dictating how the company should respond.  Almeida emailed his supervisor Graham Holmes

27  that "Defendants needed to report this fraud to the Central Bank of Brazil and the Brazilian

28  Police."  *Id.* ¶ 57.  In October 2017, Almeida emailed "Defendants' Board of Directors and

1   other high-ranking officials . . . imploring them to make the appropriate reports to Brazilian

2   authorities."  *Id.* ¶ 59.  In early November 2017, Almeida "demanded Defendants' investigative

3   team notify the Brazilian authorities that a financial fraud occurred."  *Id.* ¶ 60.

4        After the phishing scam, Almeida's work computer was confiscated by the investigation

5   team.  *Id.* ¶ 67.  Almeida alleges that Holmes stripped him of his key duties, including

6   "reviewing and facilitating payment requests."  *Id.* ¶ 64.  According to the Amended Complaint,

7   compared to other employees who had fallen victim to phishing scams, Almeida "was treated

8   harsher and had his duties stripped away from him immediately."  *Id.* ¶ 65.

9        At the end of November 2017, "having been demoted by Defendants . . . [and] treated

10  like a criminal in the wake of [the] phishing scam," Almeida "contemplated resignation."  *Id.*

11  ¶ 68.  In late November and early December 2017, Almeida approached Holmes about

12  resigning.  *Id.* ¶¶ 68–71.  On December 6, Almeida and Holmes met to discuss what Almeida

13  characterizes as his "speculative resignation" and his "decision to leave the company."  *Id.* ¶ 71.

14  A week later, on December 13, Almeida allegedly told Holmes that he had reconsidered and

15  decided to stay, but Holmes was not receptive to Almeida's change of heart.  *Id.* ¶ 72.  On

16  December 15, 2017, Holmes purportedly told Almeida that "Defendants—specifically WDC

17  agents in the United States—had 'no interest' keeping [Almeida] as an employee," and offered

18  him a "Mutual Agreement" on behalf of "all Defendants."  *Id.* ¶¶ 73–74.  According to Almeida,

19  "[t]hus, on December 15, 2017, Defendants actually terminated Plaintiff."  *Id.* ¶ 73.

20       **D.   Procedural History**

21       On July 15, 2020, Almeida filed his Initial Complaint against WDC and WD Brazil.  *See*

22  *generally* Compl., ECF No. 1.  Almeida alleged in four counts that he qualifies as a

23  whistleblower and that the Defendants retaliated against him because of his alleged

24  whistleblowing activities.  *Id.*

25       On October 2, 2020, WDC was served with a copy of the summons and the Initial

26  Complaint.  Order Granting Stip. to Extend Time to Respond to Compl. ¶ 9, ECF No. 23.

27  Because Almeida had not yet served WD Brazil, WDC alone moved to dismiss on March 10,

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2021.  Mot. to Dismiss, ECF No. 30; *see also* Order re Status at 1, ECF No. 29 (Court holding that WDC may "fil[e] its answer or motion to dismiss at any time").

Almeida's response to WDC's motion was due by March 24, 2021.  *See* Docket Entry for ECF No. 30.  Instead of opposing WDC's motion, on March 24, 2021, Almeida filed his Amended Complaint.  ECF No. 31.  The Amended Complaint adds a handful of factual assertions, but otherwise remains almost entirely unchanged.  Almeida again asserts that he is a whistleblower and that Defendants retaliated against him for speaking up about "perceived unlawful activity."  *Id.* ¶ 75.  Almeida asserts three claims against Defendants (instead of four, having dropped a time-barred state-law claim):  (1) retaliation in violation of Dodd-Frank [Count One]; (2) retaliation in violation of California Labor Code § 98.6 [Count Two]; and (3) retaliation in violation of California Labor Code §§ 1102.5–1105 [Count Three].  *Id.* ¶¶ 80–101.  Almeida still alleges that as a result of Defendants' purported actions, he lost compensation and experienced emotional pain and suffering.  *Id.* ¶ 78.  He seeks, *inter alia*, damages, double back pay, civil penalties, interest, litigation costs and fees, and an injunction "ordering Defendants to cease and desist its unlawful practices."  *Id.* at 18.

## ARGUMENT

## I.   THE COURT SHOULD DISMISS ALL CLAIMS AGAINST WD BRAZIL FOR LACK OF PERSONAL JURISDICTION

State law determines the bounds of a federal court's jurisdiction over a party.  *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 902 (9th Cir. 2018).  "California authorizes its courts to exercise jurisdiction to the full extent that such exercise comports with due process."  *Id.* (internal quotation marks omitted).

"Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  This standard requires showing that the defendant either:  "has sufficient contacts arising from or related to

1    specific transactions or activities in the forum state" (to establish specific jurisdiction), or

2    maintains "continuous and systematic general business contacts" with a forum state (to establish

3    general jurisdiction).  *Id.* at 1142.

4         "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's

5    contacts with the forum.'"  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quoting

6    *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  "Hence, it is

7    'specific' to the case before the court."  *Id.*  In contrast, general jurisdiction "permits a court to

8    hear 'any and all claims' against a defendant, whether or not the conduct at issue has any

9    connection to the forum."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

10   U.S. 915, 919 (2011)).  Either way, the plaintiff "bears the burden of establishing that

11   jurisdiction is proper."  *Id.*

12        A.       **WD Brazil Is Not Subject to General Jurisdiction**

13        "[T]he assertion of judicial authority over a defendant is much broader in the case of

14   general jurisdiction than specific jurisdiction."  *Ranza*, 793 F.3d at 1069.  Thus, to establish

15   general jurisdiction, a plaintiff "must meet an exacting standard for the minimum contacts

16   required."  *Id.* (internal quotation marks omitted); *see also Morrill*, 873 F.3d at 1141 ("When a

17   defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

18   demonstrating that jurisdiction is appropriate.") (internal quotation marks omitted).

19        With respect to a foreign corporation, general jurisdiction requires "affiliations with the

20   State . . . so 'continuous and systematic' as to render [the corporation] essentially at home in the

21   forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014).  Such contacts must be

22   "constant and pervasive."  *Id.* at 122.  "The paradigmatic locations where general jurisdiction is

23   appropriate over a corporation are its place of incorporation and its principal place of business."

24   *Ranza*, 793 F.3d at 1069 (citing *Daimler*, 571 U.S. at 137).  "Only in an 'exceptional case' will

25   general jurisdiction be available anywhere else."  *Ranza*, 793 F.3d at 1069 (quoting *Daimler*,

26   571 U.S. at 138 n.19).

27

28

1      California is neither WD Brazil's place of incorporation nor its principal place of

2  business.  The Amended Complaint itself acknowledges that WD Brazil "was and is a foreign

3  corporation duly existing by the virtue and laws of the country of Brazil."  Am. Compl. ¶ 7,

4  ECF No. 31.  Its sales office is in Brazil.  *Id.* ¶ 21.  The Amended Complaint does not allege that

5  WD Brazil has any business contacts with California outside of its parent-subsidiary

6  relationship with WDC, and it certainly does not allege any such contacts pervasive enough to

7  establish jurisdiction over WD Brazil for *any* cause of action.  In short, WD Brazil is not

8  "essentially at home" in California, and this is not an "exceptional case."  *Daimler*, 571 U.S. at

9  119, 138 n.19.

10      Further, Almeida cannot establish general jurisdiction by attributing WDC's contacts to

11  WD Brazil.  "The existence of a parent-subsidiary relationship is insufficient, on its own, to

12  justify imputing one entity's contacts with a forum state to another for the purpose of

13  establishing personal jurisdiction."  *Ranza*, 793 F.3d at 1070.  Instead, Almeida must establish

14  that "the parent and subsidiary are not really separate entities, such that one entity's contacts

15  with the forum state can be fairly attributed to the other."  *Id.* at 1071 (internal quotation marks

16  omitted).  In other words, they must be alter egos.  *See In re Boon Glob. Ltd.*, 923 F.3d 643, 654

17  (9th Cir. 2019) ("jurisdiction cannot lie where there is no evidence of undercapitalization,

18  failure to keep adequate records, or the free transfer of company assets—all of which would

19  normally be signs of a sham corporate veil").

20      "This test envisions *pervasive control* over the subsidiary, such as when a parent

21  corporation dictates every facet of the subsidiary's business—from broad policy decisions to

22  routine matters of day-to-day operation."  *Ranza*, 793 F.3d at 1073 (emphasis added, internal

23  quotation marks omitted).  Notably, "[t]otal ownership and shared management personnel are

24  alone insufficient to establish the requisite level of control."  *Id.*  Even in *Ranza*, the "heavy[]

25  involve[ment]" of the parent corporation (Nike) in its subsidiary's operations was insufficient to

26  meet the alter ego test, even though Nike exercised control over the subsidiary's "overall budget

27  and has approval authority for large purchases"; set "general human resource policies for both

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  entities and [was] involved in some hiring decisions"; operated "information tracking systems"

2  used by all of its subsidiaries; ensured that the Nike brand was "marketed consistently

3  throughout the world"; and required some of the subsidiary's employees "to report to Nike

4  supervisors on a 'dotted-line' basis." *Id.* at 1074.

5       Almeida alleges that "WDC completely manages and operates WD Brazil," Am. Compl.

6  ¶ 10, ECF No. 31, but this bare allegation does not come close to the level of control that Nike

7  exerted over its subsidiary in *Ranza*.  In that case, the Ninth Circuit held there was no alter ego

8  relationship.  Nor is there an alter ego relationship here.  As a result, Almeida cannot attribute

9  WDC's California contacts to WD Brazil for the purpose of general jurisdiction.  *See Ranza*,

10  793 F.3d at 1075; *see also Iconlab, Inc. v. Bausch Health Cos., Inc.*, 828 F. App'x 363, 364 (9th

11  Cir. 2020) (rejecting alter-ego argument based on parent corporation approving subsidiaries'

12  large purchases, financing their activity, issuing collective media releases, and submitting

13  consolidated earnings reports); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir.

14  2017) (plaintiffs' complaint, which made "almost no factual allegations regarding the nature of

15  the parent-subsidiary relationship," failed to establish alter-ego status).

16  **B.       WD Brazil Is Not Subject to Specific Jurisdiction**

17       In the Ninth Circuit, whether a defendant has sufficient contacts to be subject to specific

18  personal jurisdiction hinges on a three-part test:

19       (1) The non-resident defendant must purposefully direct his activities or
            consummate some transaction with the forum or resident thereof . . . ;
20       (2) the claim must be one which arises out of or relates to the defendant's forum-
            related activities; and
21       (3) the exercise of jurisdiction must comport with fair play and substantial justice,
            i.e. it must be reasonable.
22

23  *Morrill*, 873 F.3d at 1142.  The plaintiff must satisfy both of the first two prongs of the test.  *Id*.

24  If the plaintiff succeeds in doing so, then "the burden then shifts to the defendant to present a

25  compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal

26  quotation marks omitted).

27

28

1        Under the first prong of the test, Almeida must show that WD Brazil purposefully

2 directed its activities toward California.  "Purposeful direction requires that the defendant . . .

3 have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

4 that the defendant knows is likely to be suffered in the forum state."  *Id.* (internal quotation

5 marks omitted); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir.

6 2004).  "Actions may be directed at the forum state even if they occurred elsewhere," but

7 "'random, fortuitous, or attenuated contacts' are insufficient to create the requisite connection

8 with the forum."  *Morrill*, 873 F.3d at 1142 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

9 462, 475 (1985)).

10        Almeida cannot move past the test's first prong.  The Amended Complaint specifically

11 mentions WD Brazil all of five times, *see* Am. Compl. ¶¶ 7, 9–10, 21, 44, ECF No. 31, and none

12 of those allegations relates to any intentional act by WD Brazil that was aimed at California.  To

13 be sure, the Amended Complaint alleges that WD Brazil engaged in an intentional act when it

14 (as one of the "Defendants") "terminated Plaintiff."  *Id.* ¶ 73.  But the termination of Almeida's

15 employment (in Brazil) was not expressly aimed at California, and no such act caused any harm

16 that WD Brazil knew was likely to be suffered in California.  *See Caracal Enters. LLC v.*

17 *Suranyi*, No. 16-cv-05073, 2017 WL 446313, at *2 (N.D. Cal. Feb. 2, 2017) (Seeborg, J.)

18 ("Although plaintiffs make a prima facie showing [defendant] committed intentional acts, they

19 make no showing those acts were expressly targeted at California or that [defendant] knew the

20 harm flowing from those acts was likely to be felt in California.").[2]

21        As for the second prong of the test, Almeida's claims do not arise out of or relate to any

22 California-related activities of WD Brazil.  *Morrill*, 873 F.3d at 1142.  Indeed, the entire thrust

23 of the Amended Complaint is that Almeida was harmed in Brazil, when his employment was

24 terminated there.  *See* Am. Compl. ¶ 73, ECF No. 31.  The Court therefore lacks specific

25 jurisdiction over WD Brazil.  *See Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, 836 F.

26

27

28

---

[2] Likewise, Almeida cannot satisfy the test with respect to the United States for purposes of Rule 4(k)(2).  The Amended Complaint makes no showing that WD Brazil expressly aimed an intentional act at the United States or knew that harm from any such act would be felt in the United States.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

App'x 496, 498 (9th Cir. 2020) ("Specific personal jurisdiction is lacking because [plaintiff] did not adequately plead that its injuries arose from or related to [defendant]'s contacts in Arizona.").

Even assuming, *arguendo*, that Almeida could pass the test's first two prongs, the exercise of specific jurisdiction would not be reasonable. *See Morrill*, 873 F.3d at 1142. The reasonableness inquiry assesses "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987). As in *Asahi*, the burden on WD Brazil is "severe": this case would ultimately force WD Brazil to traverse between its base in São Paulo and the courthouse in San Francisco to defend itself. *Id*. at 114. What's more, it must also "submit its dispute with [Almeida] to a foreign nation's judicial system." *Id*. Not only that, but California has no interest in this case. Almeida is not a resident of California and, as discussed below, California law has no place in an employment dispute between a Brazilian company and its former Brazilian employee. These factors should overcome Almeida's interest in obtaining relief in the United States against his former Brazilian employer.

## II.   THE COURT SHOULD DISMISS ALMEIDA'S FEDERAL DODD-FRANK RETALIATION CLAIM (COUNT ONE)

Almeida's sole federal cause of action invokes Dodd-Frank's anti-retaliation provision, 15 U.S.C. § 78u-6, which is described in Part II.A. Count One must be dismissed, however, because § 78u-6 does not apply extraterritorially (*see infra* Part II.B), and, alternatively, because the Amended Complaint fails to allege the essential elements of a Dodd-Frank retaliation claim (*see infra* Part II.C). For either reason, the Court should dismiss Count One for failure to state a claim upon which relief can be granted. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (applying Rule 12(b)(6) to question of extraterritoriality).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the non-moving party." *Karasek*, 956 F.3d at 1104 (internal quotation marks

1   omitted).  "A complaint will not survive a motion to dismiss unless it 'contain[s] sufficient

2   factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.*

3   (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Notably, although the court "accept[s] as

4   true all factual allegations," it does not "accept as true allegations that are conclusory."  *Depot,*

5   *Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019) (internal quotation marks

6   omitted).

7         **A.**     **The Dodd-Frank Framework**

8         In the wake of the 2008 financial crisis, Congress passed Dodd-Frank to "promote the

9   financial stability of the United States by improving accountability and transparency in the

10  financial system."  *Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 773 (2018).  Key among

11  Dodd-Frank's provisions were those establishing "a new, robust whistleblower program

12  designed to motivate people who know of securities law violations to tell the SEC."  *Id.*

13  (quoting S. Rep. No. 111-176, at 36–37 (2010)).  "Dodd-Frank implemented these goals by

14  adding a new provision to the Securities Exchange Act of 1934:  15 U.S.C. § 78u-6."  *Id.* at 774.

15        Section 78u-6 defines "whistleblower" to mean "any individual who provides . . .

16  information relating to a violation of the securities laws to the Commission, in a manner

17  established, by rule or regulation, by the Commission."  15 U.S.C. § 78u-6(a)(6).  Accordingly,

18  "[t]he definition first describes *who* is eligible for protection—namely, a whistleblower who

19  provides pertinent information" to the SEC.  *Digit. Realty Tr., Inc.*, 138 S. Ct. at 777.

20        "The three clauses of § 78u-6(h)(1)(A) then describe what *conduct*, when engaged in by

21  a whistleblower, is shielded from employment discrimination."  *Id.*  An employer is prohibited

22  from discharging or otherwise discriminating against a "whistleblower" because of "any lawful

23  act done by the whistleblower" in three situations:

24        (i) in providing information to the Commission in accordance with [§ 78u-6]; (ii)
    in initiating, testifying in, or assisting in any investigation or . . . action of the
25        Commission based upon or related to such information; or (iii) in making
    disclosures that are required or protected under the Sarbanes-Oxley Act of
26        2002, [the Securities Exchange Act of 1934], . . . and any other law, rule, or
    regulation subject to the jurisdiction of the Commission.
27

28

1   15 U.S.C. § 78u-6(h)(1)(A).  The statute then creates a private right of action allowing

2   employees who believe they have been retaliated against for engaging in protected activity to

3   file suit directly in federal court, *id.* § 78u-6(h)(1)(B)(i), and permits relief including double

4   backpay with interest.  *Id.* § 78u-6(h)(1)(C).

5          Congress authorized the SEC "to issue such rules and regulations as may be necessary or

6   appropriate to implement the provisions of [§ 78u-6] consistent with" the statute's purposes.  *Id.*

7   § 78u-6(j).  For purposes of Dodd-Frank's anti-retaliation provisions, Rule 21F-2 states that

8   "[y]ou are a whistleblower for purposes of [§ 78u-6] as of the time that . . . you provide the

9   Commission with information in writing that relates to a possible violation of the federal

10  securities laws . . . that has occurred, is ongoing, or is about to occur."  17 C.F.R. § 240.21F-

11  2(a).  To qualify for § 78u-6(h)(1)'s anti-retaliation protections, the SEC's rules require that a

12  whistleblower satisfy the following criteria:

13         (i) You must qualify as a whistleblower under [17 C.F.R. § 240.21F-2(a)] before
           experiencing the retaliation for which you seek redress;
14
15         (ii) You must reasonably believe that the information you provide to the
           Commission under [§ 240.21F-2(a)] relates to a possible violation of the federal
           securities laws; and
16
17         (iii) You must perform a lawful act that meets the following two criteria:

18                (A) First, the lawful act must be performed in connection with any of the
                  activities described in [15 U.S.C. 78u-6(h)(1)(A)(i) through (iii)]; and
19
                  (B) Second, the lawful act must relate to the subject matter of your
                  submission to the Commission under [§ 240.21F-2(a)].
20  17 C.F.R. § 240.21F-2(d)(1).

21
        **B.     Count One Should Be Dismissed Because Almeida's Dodd-Frank Claim
22              Is Impermissibly Extraterritorial**

23         Almeida's Dodd-Frank claim must be dismissed.  As discussed below, § 78u-6 does not

24  apply to alleged retaliatory conduct that takes place overseas.  *Liu Meng-Lin v. Siemens AG*, 763

25  F.3d 175 (2d Cir. 2014).

26         It is a "longstanding principle of American law that legislation of Congress, unless a

27  contrary intent appears, is meant to apply only within the territorial jurisdiction of the United

28

States." *Morrison*, 561 U.S. at 255 (internal quotation marks omitted).  This presumption "rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign, matters." *Id.*  "Thus, unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." *Id.* (internal quotation marks omitted).  Put concisely, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Id.*; *see also Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013) ("it is well established that generic terms . . . do not rebut the presumption against extraterritoriality").

The Supreme Court has devised a "two-step framework for analyzing issues of extraterritoriality." *United States v. Hussain*, 972 F.3d 1138, 1142 (9th Cir. 2020) (citing *Morrison*, 561 U.S. at 262–65, and *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2101 (2016)).  First, the court must determine "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.*  If not, then, second, the court must decide "whether the case involves a domestic application of the statute by looking to the statute's focus." *Id.* (internal quotation marks omitted).  This case falters at both steps.

### 1.    Section 78u-6(h)(1) Is Not Intended to Apply Extraterritorially

In *Morrison*, the Supreme Court considered § 10(b) of the Securities and Exchange Act of 1934.  *Morrison*, 561 U.S. at 250–51.  The *Morrison* plaintiffs were foreign investors who sued foreign and American defendants for alleged misconduct in trading on foreign exchanges. *Id.* at 250–52.  The Supreme Court analyzed the plain language of § 10(b), 15 U.S.C. § 78j(b), which "[o]n its face, . . . contains nothing to suggest it applies abroad." *Id.* at 262.  After rejecting the investors' arguments that relied on provisions outside of § 10(b), *id.* at 262–65, the Court returned to the statutory text at issue and held, "[i]n short, there is no affirmative indication in the Exchange Act that § 10(b) applies extraterritorially, and we therefore conclude that it does not." *Id.* at 265.

1    All of the courts to have considered § 78u-6(h)(1)'s text have similarly concluded that

2    Congress did not intend Dodd-Frank's anti-retaliation provisions to have extraterritorial reach.

3    The Second Circuit held as much in *Liu*, finding that "[t]he plain text of the statute contains no

4    hint that the antiretaliation provision is meant to apply extraterritorially." 763 F.3d at 180.  Two

5    district courts have reached that conclusion as well.  *See Ulrich v. Moody's Corp.*, No. 13-cv-08,

6    2014 WL 12776746, at *7 (S.D.N.Y. Mar. 31, 2014) (because § 78u-6(h)(1) is "silent as to

7    extraterritorial application," it "cannot be applied outside of the United States"); *Asadi v. G.E.*

8    *Energy (USA), LLC*, No. 12-cv-345, 2012 WL 2522599, at *4 (S.D. Tex. June 28, 2012)

9    (because "the language of the Dodd-Frank Anti-Retaliation Provision is silent regarding whether

10   it applies extraterritorially," it is presumed not to "govern conduct outside the United States"),

11   *aff'd on other grounds*, 720 F.3d 620 (5th Cir. 2013).

12   Indeed, § 78u-6(h)(1) "simply indicates that '[n]o employer' may retaliate against a

13   whistleblower," which "is precisely the sort of 'generic' language that the Supreme Court has

14   expressly stated is insufficient to overcome the presumption against extraterritorial application."

15   *Liu*, 763 F.3d at 180 (quoting *Kiobel*, 133 S. Ct. at 1665).  To be sure, Congress included

16   express extraterritorial language in another Dodd-Frank provision, which addresses suits by the

17   SEC and the United States.  *See* 15 U.S.C. § 78aa(b)(2) (providing federal jurisdiction of an

18   enforcement action "involving . . . conduct occurring outside the United States that has a

19   foreseeable substantial effect within the United States").  But this further confirms that Congress

20   elected *not* to do the same in § 78u-6(h)(1).  *Liu*, 763 F.3d at 180–81; *Asadi*, 2012 WL 2522599,

21   at *4; *Ulrich*, 2014 WL 12776746, at *7; *see also Digit. Realty Tr., Inc.*, 138 S. Ct. at 777

22   ("[W]hen Congress includes particular language in one section of a statute but omits it in

23   another[,] . . . this Court presumes that Congress intended a difference in meaning.") (internal

24   quotation marks omitted).

25   There is "absolutely nothing" in § 78u-6(h)(1) suggesting it applies extraterritorially.

26   *Liu*, 763 F.3d at 180.  As a result, it has no extraterritorial effect, and Count One's Dodd-Frank

27   claim must be dismissed.

28

1

**2.      This Case Does Not Involve a Domestic Application of § 78u-6(h)(1)**

2       Because § 78u-6(h)(1)'s language does not rebut the presumption against

3   extraterritoriality, the court must decide whether Almeida's case involves a domestic application

4   of the statute.  This inquiry requires "looking to the statute's focus," i.e., "the object of its

5   solicitude, which can include the conduct it seeks to regulate as well as the parties and interests

6   it seeks to protect or vindicate." *Hussain*, 972 F.3d at 1142 (internal quotation marks omitted).

7   The question then becomes whether the conduct that is proscribed "touch[es] and concern[s] the

8   territory of the United States . . . with sufficient force to displace the presumption against

9   extraterritorial application." *Kiobel*, 569 U.S. at 124–25.  If "all the relevant conduct occurred

10  abroad, that is simply the end of the matter." *Mujica v. AirScan Inc.*, 771 F.3d 580, 594 (9th

11  Cir. 2014) (quoting *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013)).

12      Here, the focus of § 78u-6(h)(1), the Dodd-Frank provision that creates the private cause

13  of action on which Almeida relies, is protecting whistleblowers from retaliation.  To avoid the

14  presumption against extraterritoriality, the Amended Complaint must establish that the conduct

15  relevant to Almeida's purported retaliatory termination "occurred in the United States."

16  *Hussain*, 972 F.3d at 1142 (quoting *RJR Nabisco*, 136 S. Ct. at 2101).

17      The Amended Complaint does nothing of the sort.  The factual bases of Almeida's

18  retaliation claim clearly originate in Brazil:  he worked in Brazil; the alleged misconduct

19  underlying his alleged "whistleblowing" activity implicates a Brazilian contractor, Brazilian tax

20  authorities, and a Brazilian tax-incentive program; and after Almeida reported his concerns to

21  the SEC, Defendants, a year later, purportedly retaliated against him by terminating his

22  employment, in Brazil.  In short, "[t]he facts alleged in the complaint reveal essentially no

23  contact with the United States regarding either the wrongdoing or the protected activity." *Liu*,

24  763 F.3d at 179.

25      Indeed, the 101-paragraph Amended Complaint refers to the "United States" largely in

26  passing.  It does so in reference to this Court and its jurisdiction (Am. Compl. ¶¶ 2, 81, ECF No.

27  31); when discussing the SEC's general oversight of WDC as a publicly traded company (*id.*

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

¶¶ 6, 23); in its allegations concerning Defendants' internal investigation, which "was handled by Defendants' United States offices, by United States citizens, based in California" (*id.* ¶¶ 20, 28, 32, 67); and when discussing where Almeida himself sent certain correspondence (*id.* ¶¶ 20, 47). These minimal assertions do not transform Almeida's allegations into a domestic § 78u-6(h)(1) claim.

First, in the absence of any alleged nexus (much less a meaningful one) between the wrongful conduct in Brazil and WDC's publicly listed stock, the fact that WDC is "subject to rules and regulations promulgated by the [SEC]," Am. Compl. ¶ 6, ECF No. 31, is beside the point.

> [W]here a plaintiff can point only to the fact that a defendant has listed securities on a U.S. exchange, and the complaint alleges no further meaningful relationship between the harm and those domestically listed securities, the listing of securities alone is the sort of "fleeting" connection that "cannot overcome the presumption against extraterritoriality."

*Liu*, 763 F.3d at 180 (quoting *Morrison*, 561 U.S. at 263).

Second, it is simply irrelevant that United States citizens investigated Almeida's internal report, inasmuch as "the alleged wrongdoing and protected activity took place outside the United States." *See Ulrich v. Moody's Corp.*, 721 F. App'x 17, 19 (2d Cir. 2018). Almeida was employed in Brazil, his concerns related to a Brazilian tax scheme, and his employment was terminated in Brazil. That Defendants' internal investigation was conducted—in Brazil—by U.S. employees and lawyers is insufficient to extend the territorial reach of § 78u-6(h)(1), especially when the Amended Complaint fails to even connect the 2016 internal investigation to Almeida's "termination" a year later.

And similarly, third, although Almeida asserts that WDC, a U.S. corporation, employed him jointly along with WD Brazil, Am. Compl. ¶ 8, ECF No. 31, the domestic location of a purported employer's headquarters is immaterial when the complaint makes clear that the events relevant to the employee's allegedly retaliatory termination took place entirely abroad. This would be the case even if Almeida had been based in the United States himself. *See Asadi*,

2012 WL 2522599, at *2, *5 (foreclosing § 78u-6(h)(1) claim brought by "U.S.-based

employee" of a U.S. company because "the majority of events" occurred overseas).

"[I]t is a rare case of prohibited extraterritorial application that lacks all contact with the

territory of the United States." *Morrison*, 561 U.S. at 266.  "But the presumption against

extraterritorial application would be a craven watchdog indeed if it retreated to its kennel

whenever some domestic activity is involved in the case." *Id*.  Because Almeida has alleged

only fleeting connections to the United States, his Dodd-Frank claim is impermissibly

extraterritorial.  *Liu*, 763 F.3d at 180.

## C.   Regardless, Count One Should Be Dismissed Because the Amended Complaint Fails to State a Dodd-Frank Retaliation Claim

The Ninth Circuit has not yet established the elements of a Dodd-Frank retaliation claim,

nor have any other federal courts of appeals.  But several lower courts have held, consistent with

the text of § 78u-6(h)(1), that to state a Dodd-Frank retaliation claim, a "whistleblower" must

show:  (1) he "engaged in protected activity"; (2) he "suffered a materially adverse employment

action"; and (3) the adverse employment action was "causal[ly] connect[ed]" to the protected

activity.  *Miglani v. Edwards Lifesciences, LLC*, No. 17-cv-418, 2018 WL 6265007, at *3 (C.D.

Cal. Jan. 8, 2018); *see Cellucci v. O'Leary*, No. 19-cv-2752, 2020 WL 977986, at *10 (S.D.N.Y.

Feb. 28, 2020) (similar); *Thomas v. Tyco Int'l Mgmt. Co.*, 416 F. Supp. 3d 1340, 1367 (S.D. Fla.

2019) (similar); *Price v. UBS Fin. Servs., Inc.*, No. 17-cv-01882, 2017 WL 5667994, at *3

(D.N.J. Nov. 27, 2017) (similar).

Even if, in theory, Almeida's federal retaliation claim could survive the presumption

against extraterritoriality, his Amended Complaint nonetheless fails to state a claim against

WDC or WD Brazil under § 78u-6(h)(1) for at least five reasons.  Any one of those grounds

requires dismissal of Count One.

***First***, before reaching the elements of a Dodd-Frank retaliation claim, a plaintiff must

plead facts establishing that he meets Dodd-Frank's definition of "whistleblower"; otherwise, he

does not qualify for protection under § 78u-6(h)(1).  This Court held as much in *Banko v. Apple*

1    *Inc.*, 20 F. Supp. 3d 749 (N.D. Cal. 2013) (Seeborg, J.), where the Court dismissed the

2    plaintiff's Dodd-Frank claim because "Section 78u-6(h) only extends 'whistleblower protection'

3    to individuals who qualify as 'whistleblowers'" under the statute.  20 F. Supp. 3d at 757; *see* 15

4    U.S.C. § 78u-6(h)(1)(A) (no employer may retaliate "against[] *a whistleblower* in the terms and

5    conditions of employment because of any lawful act done by *the whistleblower*") (emphasis

6    added); *Digit. Realty Tr., Inc.*, 138 S. Ct. at 777 ("[t]he definition first describes *who* is eligible

7    for protection"); *see also Fitzpatrick v. Milwaukee Sch. of Eng'g*, No. 18-cv-0541, 2020 WL

8    7060133, at *6 (E.D. Wis. Dec. 2, 2020) ("the Court must first confirm that [plaintiff] is a

9    'whistleblower' entitled to bring a claim under [§ 78u-6]").

10        Because the Amended Complaint fails to allege any facts that would show Almeida was

11    a "whistleblower," his federal cause of action falters right out of the gate.  A "whistleblower"

12    must provide to the SEC "information relating to a violation *of the securities laws*."  15 U.S.C.

13    § 78u-6(a)(6) (emphasis added); 17 C.F.R. § 240.21F-2(a) (a "whistleblower" must provide

14    SEC with information concerning "a possible violation of the federal securities laws"); *Digit.*

15    *Realty Tr., Inc.*, 138 S. Ct. at 777.  The Amended Complaint, however, merely indicates that

16    Almeida was concerned that Digitron's unpaid taxes "could harm" WDC, Am. Compl. ¶ 22,

17    ECF No. 31, and then later asserts in conclusory fashion that he is a "whistleblower within the

18    meaning of Dodd-Frank." *Id.* ¶ 83.  This does not suffice.

19        To the extent Almeida believes he is a "whistleblower" because he submitted a TCR to

20    the SEC, *see id.* ¶¶ 23, 82, Almeida does not specify what information was contained in the

21    TCR (other than to state obliquely that the TCR "incorporated and [was] based on the same

22    complaints [Almeida] made internally"), whether that information related to a violation of U.S.

23    securities laws, or which provision of the securities laws is at issue.  Without those details,

24    Almeida has failed to allege that he was a "whistleblower" within the meaning of § 78u-6.  *See*

25    *Cellucci*, 2020 WL 977986, at *10 (because the complaint contained "no allegation as to the

26    contents" of the plaintiff's submission to the SEC, "the Court has no way to assess whether he

27    was complaining of conduct that is even arguably within the scope of . . . Dodd-Frank"); *see*

28

1   *also id.* ("The Court finds Plaintiffs' reticence to include at least some factual detail in the

2   amended complaint exceptionally curious, as [plaintiff] should know well the contents of his

3   own complaint [to the SEC].").  Moreover, even if the Court were to read the Amended

4   Complaint generously and assume that Almeida reported to the SEC his concerns that Digitron,

5   a Brazilian company, engaged in fraud and/or bribery in Brazil to avoid payment of Brazilian

6   taxes, "it is hard to see how [that] conduct could possibly be a 'violation of the securities laws'

7   as required by the statute." *Fitzpatrick*, 2020 WL 7060133, at \*7 (quoting 15 U.S.C.

8   § 78u-6(a)(6)).

9        ***Second***, even if Almeida were a protected "whistleblower," the Amended Complaint

10   fails to allege facts showing that he engaged in a protected activity.  In particular, the Amended

11   Complaint fails to establish that Almeida had a "*reasonabl[e] belie[f]* that the information [he]

12   provide[d] to the Commission . . . relate[d] to a possible violation of the federal securities laws."

13   17 C.F.R. § 240.21F-2(d)(1)(ii) (emphasis added).  The "reasonable belief" standard "involves

14   both a subjective component and an objective component." *Erhart v. BofI Holding, Inc.*, 269 F.

15   Supp. 3d 1059, 1072 (S.D. Cal. 2017) (internal quotation marks omitted).  "The subjective

16   component is satisfied if the employee actually believed that the conduct complained of

17   constituted a violation of relevant law." *Id.* (same).  The objective component "is evaluated

18   based on the knowledge available to a reasonable person in the same factual circumstances with

19   the same training and experience as the aggrieved employee." *Id.* (same); *see Nielsen v.*

20   *AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014) ("That is to say, a plaintiff must show

21   not only that he believed that the conduct constituted a violation, but also that a reasonable

22   person in his position would have believed that the conduct constituted a violation.") (internal

23   quotation marks omitted).

24        Here, the Amended Complaint asserts only that Almeida reported to the SEC what he

25   "reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes,

26   rules and regulations."  Am. Compl. ¶ 84, ECF No. 31; *see also id.* ¶ 85 (similar).  This "general

27   allegation . . . does not suffice." *Erhart v. Bofi Holding, Inc.*, No. 15-cv-02287, 2016 WL

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    5369470, at *13 (S.D. Cal. Sept. 26, 2016).  "Even if the Court were to draw the inference that

2    [Almeida] subjectively believed th[e] information [in the TCR] related to a securities law

3    violation," which, as discussed immediately above is alone a stretch, "without more detail,

4    [Almeida] has not plausibly pled a belief that could be found to be objectively reasonable based

5    on a reasonable person in his circumstances."  *Id.* at *13 n.5.  The Amended Complaint contains

6    not a single fact showing what knowledge is available to a reasonable person in Almeida's

7    circumstances, or on what training or experience he relies, *see Erhart*, 269 F. Supp. 3d at 1072,

8    nor does the Amended Complaint allege that a reasonable person in his position would have

9    believed that Digitron's conduct in Brazil constituted a violation of the U.S. securities laws,

10   which would have required a belief that Digitron's actions "approximated the elements of [a

11   securities law violation]."  *Rocheleau v. Microsemi Corp.*, 680 Fed. App'x 533, 536 (9th Cir.

12   2017); *see also Lawrence v. IBM Corp.*, No. 12-cv-8433, 2017 WL 3278917, at *10 (S.D.N.Y.

13   Aug. 1, 2017) ("to be reasonable, the purported whistleblower's belief cannot exist wholly

14   untethered from these specific provisions" of the securities laws) (internal quotation marks

15   omitted).  Again, the Amended Complaint does not even specify which securities law is at issue;

16   it certainly does not satisfy the "reasonable belief" standard.

17        ***Third***, although termination can constitute "a materially adverse employment action,"

18   *Archuleta v. Corr. Corp. of Am.*, No. 15-cv-1608, 2021 WL 308593, at *4 (D. Nev. Jan. 29,

19   2021), the Amended Complaint alleges that the parties' "Mutual Agreement" ended Almeida's

20   employment, not any unilateral "materially adverse employment action" by the Defendants.

21   The Amended Complaint states that on December 15, 2017, Holmes offered to Almeida a

22   "Mutual Agreement."  Am. Compl. ¶ 73.  The Amended Complaint then indicates that

23   Almeida's employment terminated that day as a result of the Mutual Agreement.  *Id.*  When, as

24   here, a plaintiff-employee and defendant-employer enter into a mutual termination agreement

25   and agree to end the plaintiff's employment, the plaintiff "was not discharged" and has no claim

26   that the termination was wrongful.  *Curtis v. Cafe Enters., Inc.*, No. 15-cv-32, 2016 WL

27

28

1    6916786, at *9 (W.D.N.C. Nov. 21, 2016), *aff'd*, 715 F. App'x 268 (4th Cir. 2017).  Almeida

2    was not discharged; the Amended Complaint reflects that he agreed to leave.

3         **Fourth**, the Amended Complaint does not allege facts showing that Almeida's purported

4    termination was causally connected to any protected activity.  *Miglani*, 2018 WL 6265007, at

5    *4; *Thomas*, 416 F. Supp. 3d at 1367–68; *see* 15 U.S.C. § 78u-6(h)(1)(A) (an employer is

6    prohibited from retaliating against a whistleblower "*because of* any lawful act done by the

7    whistleblower") (emphasis added).  "Essential to a causal link is evidence that the employer was

8    aware that the plaintiff had engaged in the protected activity."  *Miglani*, 2018 WL 6265007, at

9    *4 (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)).  In particular, the

10   "decisionmaker" responsible for the allegedly retaliatory action must have knowledge of the

11   plaintiff's protected activity; otherwise, "there can be no retaliation for engaging in that

12   activity."  *Id.* (internal quotation marks omitted); *see Thomas*, 416 F. Supp. 3d at 1363 (to state

13   a claim under § 78u-6, plaintiff must allege facts showing "that the relevant decision makers

14   were aware of [the plaintiff's] protected conduct when they made the decision to fire

15   [plaintiff]").

16        Here, the Amended Complaint fails to plead any facts from which the Court could infer

17   that *anyone* knew about Almeida's protected activity, i.e., that he was the one who submitted the

18   TCR to the SEC, much less that a corporate "decision maker" both knew about the TCR and

19   was subsequently responsible for Almeida's purported termination.  To be sure, the Amended

20   Complaint alleges that Almeida relayed his concerns about Digitron's supposed scheme

21   internally, which in some circumstances could give rise to an inference of knowledge, but in this

22   case, Almeida did so anonymously.  Am. Compl. ¶¶ 20, 27, ECF No. 31.  An anonymously sent

23   email surely cannot reveal any "retaliatory bias or motive on the part of . . . the decisionmaker,"

24   *Miglani*, 2018 WL 6265007, at *4, especially when the SEC is "obligated to maintain the

25   confidentiality of all reports," *Cellucci*, 2020 WL 977986, at *11, and when Almeida has

26   alleged no facts from which it could be inferred that the (unidentified) decisionmaker would

27   have known Almeida was the anonymous complainant.  Almeida does not allege any

28

circumstances "that could plausibly explain how Defendants could have learned about [plaintiff's] confidential report [to the SEC]," nor how the decisionmaker in particular could have learned about it.  *Id*.

**Fifth**, even if a decisionmaker knew about Almeida's TCR, the Amended Complaint fails to establish causality for an independent reason.  In the absence of any direct evidence that Almeida was terminated because he engaged in protected activity (i.e., submitted his TCR to the SEC), he must at least allege facts showing temporal proximity between the TCR and his termination to give rise to an inference of causation.  The Amended Complaint does not do so.

The Supreme Court has held that the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action . . . must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). In the Ninth Circuit, periods as short as four months defeat any plausible claim that the plaintiff's protected activity could have been a contributing factor in his termination.  *See*, *e.g.*, *Govan v. Sec. Nat'l Fin. Corp.*, 502 Fed. App'x 671, 674 (9th Cir. 2012) (six months between protected activity and adverse action was "too distant to support an inference of causation"); *Swan v. Bank of Am.*, 360 Fed. App'x 903, 906 (9th Cir. 2009) ("BOA terminated Swan four months after her return from leave, which is too remote in time to support a finding of causation"); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1068 (9th Cir. 2002) (ten-month gap between protected action and termination could not give rise to inference of causation); *see Thomas*, 416 F. Supp. 3d at 1363–64 (gap of almost four months defeated Dodd-Frank complaint "as a matter of law"); *Miglani*, 2018 WL 6265007, at *4 (year-long period between protected activity and termination defeated causality in Dodd-Frank case).  Here, the year-and-a-half-long gap between when Almeida submitted his TCR to the SEC (on June 16, 2016), and when his employment ended (on December 15, 2017) is far too great to give rise to an inference of causality.

Rather than adequately alleging that Almeida was discharged as a result of submitting the TCR to the SEC, the Amended Complaint instead details an intervening event that gave rise

1  to Almeida's departure, namely the phishing scam.  Almeida describes at length how his

2  participation in the phishing scam, which cost the company $2 million, resulted in his decision

3  to submit his resignation and agree to his ultimate "termination."  Am. Compl. ¶¶ 38–74, ECF

4  No. 31.  Any inference of causation between Almeida's alleged whistleblowing activity and

5  purported discharge is defeated because "there was an intervening causal event that occurred

6  between the protected activity and the allegedly retaliatory discharge."  *Tasadfoy v. Ruggiero*,

7  365 F. Supp. 2d 542, 551 (S.D.N.Y. 2005); *see also Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d

8  1011, 1026 (N.D. Cal. 2010) (holding that an "intervening event negates any inference that

9  Plaintiff's complaint caused the subsequent adverse action").

10         In sum, Almeida fails to plausibly allege a Dodd-Frank retaliation claim.  The Amended

11  Complaint alleges no facts showing that Almeida was a "whistleblower" who provided to the

12  SEC information relating to a violation of U.S. securities laws; that he reasonably believed his

13  TCR related to a possible violation of the federal securities laws, such that he engaged in

14  "protected activity"; that he "suffered a materially adverse employment action" when he agreed

15  to terminate his own employment; or that there is any causal link between Almeida's TCR and a

16  purported decision by Defendants to end his employment.  Count One must be dismissed.

17  **III.   THE COURT SHOULD DISMISS ALMEIDA'S STATE-LAW CLAIMS (COUNTS
        TWO AND THREE)**

18
         **A.    The Court Should Decline to Exercise Supplemental Jurisdiction Over
19              Almeida's State-Law Claims**

20         When a district court "has dismissed all claims over which it has original jurisdiction," it

21  may decline to exercise supplemental jurisdiction over any related state-law claims.  28 U.S.C.

22  § 1367(c)(3); *Whalen v. McMullen*, 907 F.3d 1139, 1153 (9th Cir. 2018).  "[I]n the usual case in

23  which all federal-law claims are eliminated before trial, the balance of factors to be

24  considered . . . judicial economy, convenience, fairness, and comity . . . will point toward

25  declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ.*

26  *v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

27

28

1    Numerous district courts have declined to exercise supplemental jurisdiction over state-

2   law claims after disposing of Dodd-Frank whistleblower allegations.  *See*, *e.g.*, *Reyher v. Grant*

3   *Thornton, LLP*, 262 F. Supp. 3d 209, 217 (E.D. Pa. 2017) ("There is no affirmative justification,

4   let alone extraordinary circumstances, that justifies my retaining jurisdiction over [plaintiff's]

5   state law claims.  The parties have not even completed discovery."); *Verble v. Morgan Stanley*

6   *Smith Barney, LLC*, 148 F. Supp. 3d 644, 659 (E.D. Tenn. 2015) ("Having found the federal

7   claims should be dismissed on defendants' motion to dismiss, pursuant to § 1367(c), the Court

8   will decline to exercise continuing supplemental jurisdiction over plaintiff's state-law claims"),

9   *aff'd*, 676 F. App'x 421 (6th Cir. 2017); *Asadi*, 2012 WL 2522599, at *7 ("given that Plaintiff's

10   Dodd-Frank claim is dismissed, the Court declines to exercise supplemental jurisdiction").

11    This Court should decline to exercise supplemental jurisdiction in this case as well.

12   Section 78u-6(h)(1) is the only basis Almeida has asserted for federal jurisdiction, and neither of

13   his state claims independently confers jurisdiction in this Court.  Further, "the balance of factors

14   does not tip in favor of retaining the state-law claims" (*see Sanford v. MemberWorks, Inc.*, 625

15   F.3d 550, 561 (9th Cir. 2010)):  the parties have not engaged in their initial case management

16   conference with the Court, and discovery has not even started.  Accordingly, if the Court

17   dismisses Almeida's Dodd-Frank claim, the Court should decline to exercise supplemental

18   jurisdiction over Almeida's state claims and dismiss them too.  *See* 28 U.S.C. § 1367(c)(3).

19
20
   **B.    The Court Should Dismiss Almeida's State-Law Claims for Alternative Reasons**

21    Almeida's two state-law claims—retaliation in violation of California Labor Code § 98.6

22   and retaliation in violation of California Labor Code § 1102.5—each suffer from their own fatal

23   defects.  Consequently, even if the Court were to exercise supplemental jurisdiction, the claims

24   should be dismissed.

25    **1.    Almeida's California Claims Are Impermissibly Extraterritorial**

26    As with Almeida's Dodd-Frank claim, his state-law claims fail because they do not

27   apply to employment decisions concerning a Brazilian employee.  "[S]tate statutes such as the

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

California Labor Code are presumed not to have extraterritorial effect." *Wood v. iGATE Techs., Inc.*, No. 15-cv-799, 2016 WL 3548410, at *5 (N.D. Cal. June 30, 2016) (citing *N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 95 (Cal. 1916) ("Ordinarily the statutes of a state have no force beyond its boundaries. . . . Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions [o]ccurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect.")).

California Labor Code § 98.6 "prohibits retaliation against an employee for exercising rights under the Labor Code," and § 1102.5 "prohibits adverse employment actions in response to certain protected activity." *Alabado v. French Concepts, Inc.*, No. 15-cv-2830, 2016 WL 5929247, at *10 (C.D. Cal. May 2, 2016). Specifically, California Labor Code § 98.6 states that:

> [a] person shall not discharge an employee . . . because the employee . . . engaged in any conduct delineated in this chapter . . . or because the employee . . . has filed a bona fide complaint or claim . . . relating to his . . . rights that are under the jurisdiction of the Labor Commissioner.

Cal. Lab. Code § 98.6(a). California Labor Code § 1102.5 provides that "[a]n employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute." Cal. Lab. Code § 1102.5(b).[3]

---

[3] The Amended Complaint also recites the language of §§ 1102.5(a) and (c). *See* Am. Compl. ¶ 98, ECF No. 31. Subsection (a) prohibits an employer from making, adopting, or enforcing "any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency." Cal. Lab. Code § 1102.5(a). Other than restating the foregoing statutory language, *see* Am. Compl. ¶ 98, ECF No. 31, the complaint does not allege the existence or enforcement by WDC of any such "rule, regulation, or policy," making subsection (a) irrelevant. Subsection (c) provides that "[a]n employer . . . shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute." Cal. Lab. Code § 1102.5(c). The Amended Complaint also reels off this statutory language, *see* Am. Compl. ¶ 100, ECF No. 31, but Almeida has not alleged facts supporting his assertion that he refused to participate "in fraudulent, negligent, and inaccurate work-related-activities." *Id.*

1    As reflected in the foregoing statutory language, neither § 98.6 nor § 1102.5

2 "affirmative[ly] indicat[es]" that the California legislature intended their prohibitions to apply

3 extraterritorially.  *Ward v. United Airlines, Inc.*, 466 P.3d 309, 317 (Cal. 2020).  In contrast, the

4 California legislature has, "in other Labor Code provisions, expressly provided for

5 extraterritorial application," which "reinforce[s] the presumption against extraterritoriality" with

6 respect to §§ 98.6 and 1102.5.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1006 (N.D.

7 Cal. 2014).  Consequently, "the presumption against extraterritoriality applies . . . in full force."

8 *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011).

9    The inquiry under California law thus becomes whether "the conduct which gives rise to

10 liability . . . occur[red] in California."  *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 968 P.2d

11 539, 554 (Cal. 1999).  The Amended Complaint does not assert, even in a conclusory manner,

12 that any purportedly retaliatory actions were taken (given that Almeida agreed to end his

13 employment), let alone that any retaliatory actions occurred in *California* (inasmuch as

14 Almeida's employment was terminated in Brazil).  The most Almeida can muster is an

15 allegation that Holmes told him "Defendants—specifically WDC agents in the United States—

16 had 'no interest' [in] keeping Plaintiff as an employee."  Am. Compl. ¶ 73, ECF No. 31.  Counts

17 Two and Three should be dismissed.  *See Sullivan*, 254 P.3d at 249 (declining to speculate about

18 where conduct giving rise to liability might have occurred).

19
          **2.    Almeida's California Claims Fail to State a Claim Upon Which
20                 Relief Can Be Granted**

21    In any event, Counts Two and Three must be dismissed for failure to state a claim.  Both

22 § 98.6 and § 1102.5 of the California Labor Code require a plaintiff to plead retaliation.

23 *Alabado*, 2016 WL 5929247, at *10; *Suarez v. Bank of Am. Corp.*, No. 18-cv-01202, 2018 WL

24 3659302, at *14 (N.D. Cal. Aug. 2, 2018).  To do so, "a plaintiff must show that:  (1) [he]

25 engaged in a protected activity; (2) [his] employer subjected [him] to an adverse employment

26 action; and (3) there is a causal connection between the two."  *Alabado*, 2016 WL 5929247, at

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  *10; *Turner v. City & Cnty. of S.F.*, 892 F. Supp. 2d 1188, 1199 (N.D. Cal. 2012).  As with his

2  federal Dodd-Frank claim, Almeida does not allege facts sufficient to meet the legal test.

3     ***First***, the Amended Complaint fails to establish that Almeida engaged in protected

4  activity for purposes of § 98.6 and § 1102.5.  Almeida has not even specified what constitutes

5  his state-law protected activity, other than to assert, with respect to both § 98.6 and § 1102.5

6  that:

> 7  Plaintiff objected to unlawful practices, as promulgated by Federal Law, SEC
>    regulations, SEC Administrative Guidance, and industry standards; Plaintiff
> 8  refused to participate in fraudulent, negligent, and inaccurate work-related-
>    activities; Plaintiff made numerous internal complaints about perceived unlawful
> 9  practices and actual unlawful practices; and Plaintiff complained about activities
> 10  that should impact shareholders of WDC.

11  Am. Compl. ¶¶ 94, 100, ECF No. 31.  Merely restating the statutory language of §§ 98.6 and

12  1102.5, however, does not suffice to state a claim.

13     Regardless, nowhere does Almeida allege that he made a "bona fide claim regarding a

14  right" under the jurisdiction of the Labor Commissioner, which is required for a § 98.6 claim.

15  *Marx v. Storage Tech. Corp.*, Nos. B178202, B182100, 2006 WL 3222499, at *9 (Cal. Ct. App.

16  Nov. 8, 2006).  And, "the disclosure protected under section 1102.5 is one that is made 'to a

17  government or law enforcement agency, where the employee has reasonable cause to believe

18  that the information discloses a violation of state or federal statute.'"  *Nieves v. City of Oakland*,

19  No. A144592, 2016 WL 6879282, at *3 (Cal. Ct. App. Nov. 22, 2016) (quoting Cal. Lab. Code

20  § 1102.5).  For the reasons discussed above, the Amended Complaint alleges no facts to

21  establish that Almeida reasonably believed the Digitron scheme was illegal under U.S. law.  At

22  most, he complained about activities that he believed "should impact" WDC shareholders.  Am.

23  Compl. ¶¶ 94, 100, ECF No. 31.

24     ***Second***, although WDC again does not dispute that adverse employment action includes

25  "ultimate employment decisions (e.g., hiring, firing, demotion)," *Patten v. Grant Joint Union*

26  *High Sch. Dist.*, 134 Cal. App. 4th 1378, 1387 (2005), the Amended Complaint states that on

27  December 15, 2017, Holmes offered Almeida a "Mutual Agreement" and indicates that

28

1    Almeida's employment ended because Almeida agreed to leave.  Am. Compl. ¶¶ 73–74, ECF

2    No. 31.  Neither Defendant subjected Almeida to an adverse employment action.

3            *Third*, the Amended Complaint fails to allege facts that would establish a causal

4    connection between any purported protected activity and Almeida's alleged termination.  The

5    causal link may be established by "showing that plaintiff engaged in protected activities, that his

6    employer was aware of the protected activities, and that the adverse action followed within a

7    relatively short time thereafter."  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590,

8    615 (1989).

9            As discussed with the Dodd-Frank claim, the Amended Complaint alleges no facts

10   establishing that Defendants were "aware that [Almeida] had engaged in . . . protected activity,"

11   which is "*[e]ssential* to a causal link."  *Garcia-Brower v. Premier Auto. Imps. of CA, LLC*, 55

12   Cal. App. 5th 961, 978 (2020) (emphasis added).  Nor does the Amended Complaint show that

13   Almeida's purported termination "followed within a relatively short time" after any supposed

14   protected activity.  *Fisher*, 214 Cal. App. 3d at 615.  Moreover, even if Almeida could be

15   considered to have been discharged, the Amended Complaint describes an intervening event

16   (the phishing scam) that breaks the chain of causation between the alleged protected activity and

17   adverse employment action.  Almeida cannot, as a result, proceed on Counts Two and Three.

18                                              **CONCLUSION**

19           For the foregoing reasons, the Defendants' motion to dismiss should be granted.

20                                                    ***

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   Dated:  April 30, 2021             Respectfully submitted,

2

3                                       MILLER & CHEVALIER CHARTERED

                                        By   /s/  *Laura G. Ferguson*
4                                            Laura G. Ferguson (*pro hac vice*)
                                             Dawn E. Murphy-Johnson (*pro hac vice*)
5

6                                       OGLETREE DEAKINS

7                                       By   /s/  *Carolyn A. Knox*
                                             Carolyn A. Knox
8                                            Andrew M. Massara

9
                                        *Counsel for Defendants Western Digital Corporation and*
10                                      *Western Digital do Brasil Comércio e Distribuição de*
                                        *Produtos de Informática Ltda*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF