**DEREK SMITH LAW GROUP, PLLC**
ALEXANDER G. CABECEIRAS, ESQ.
One Penn Plaza, Suite 4905
New York, New York 10119
Phone: (212) 587-0760
Fax: (212) 587-4169
*alexc@dereksmithlaw.com*
*APPEARANCE PRO HACE VICE*
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

---------------------------------------------------------X

| | |
|---|---|
| Airton Amorim De Almeida,  Plaintiff, | Civil Case No: 3:20-cv-4735(RS) |
| -against- | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| Western Digital Corporation, *et al.*  Defendants. | |

---------------------------------------------------------X

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1

**Table of Contents**

I. Introduction ………………………………………………….. *4*

II. Standard of Review ………………………………………….. *4*

III. Argument ……………………………………………………… *5*

   i. Plaintiff is Eligible For Protections Under Dodd-Frank …………. *5*

   ii. Plaintiff Has Stated a Claim for Retaliation Under Dodd-Frank ...*7*

   iii. Plaintiff Has Stated a Claim for Retaliation Under CA Law …….. *12*

      a. Extraterritorial Application …………………………………… *13*

   iv. The Court Has Jurisdiction Over WD Brazil ……………………….. *13*

IV. Conclusion ……………………………………………………… *16*

MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

**Table of Authorities**

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ………………………………………………...… *5*

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ……………………………………….….. *4*

Casissa v. First Republic Bank, 2012 WL 3020193, at *9 (N.D. Cal. July 24, 2012) ……….. *12*

Couch v. Morgan Stanley & Co. Inc., 656 F. App'x 841, 843 (9th Cir. 2016) ……………… *12*

Digital Realty Tr., Inc. v. Somers, 138 S. Ct. 767, 777, 200 L. Ed. 2d 15 (2018) ……….…. *8*

Erhart v. BofI Holding, Inc., 2020 WL 1550207, at *28 (S.D. Cal. Mar. 31, 2020) ………. *8, 9*

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011) ……………..….. *15*

International Shoe, 326 U.S., at 317, 66 S.Ct. 154 …………………………………….…… *13*

Liu Meng-Lin v. Siemens AG, 763 F.3d 175 (2d Cir. 2014) …………………….....………  *7*

McVeigh v. Recology San Francisco, 213 Cal. App. 4th 443, 468 (2013) …………….....…. *12*

Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) …………………….……..... *4*

Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003) ………………………………............... *4*

RJR Nabisco, Inc. v. Eur. Cmty., 136 S. Ct. 2090, 2100, 195 L. Ed. 2d 476 (2016) ……..... *3*

Rosenblum v. Thomson Reuters (Markets) LLC, 984 F. Supp. 2d 141 (S.D.N.Y. 2013) …. *8*

Smiley v. Hologic, Inc., 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017) ……..…….. *13*

MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

## I. Introduction

Plaintiff reported Defendants to the Securities and Exchange Commission ("SEC"). Plaintiff reported Defendants based on possible fraud, tax evasion, and other possible violations of laws, rules, or regulations.

In response, Defendants gave Plaintiff the *Milton Waddems* treatment and slowly stripped him of job responsibilities, isolated him, and treated him like a criminal.[1] Ultimately, Defendants terminated Plaintiff because he engaged in protected activities.

## II. Standard of Review

A plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

"For a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

In other words, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative

---

[1] Milton Waddems is a character from the movie *Office Space* (1999). In the movie Waddems' employer moves his desk to an undesirable location, begins using his cubicle space as a supply closet, removes him from payroll, and, ultimately, takes his beloved red Swingline stapler.

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

### III.    Argument

#### i.    Plaintiff is Eligible For Protections Under Dodd-Frank

The Court can face difficult questions of extraterritorial application of statutes when conduct occurs *outside* the United States. (*See* RJR Nabisco, Inc. v. Eur. Cmty., 136 S. Ct. 2090, 2100, 195 L. Ed. 2d 476 (2016) seeking to "avoid the international discovery that can result when U.S. law is applied to conduct in foreign countries."). This Court does not have to grapple with such questions in Airton's case, as the acts that give rise to this action occurred *inside* the United States, specifically in the State of California.

*First,* Plaintiff and Defendants employment relationship began in, was controlled from, and ended in the State of California. For example, Western Digital Corporation ("WDC") hired Plaintiff as their Latin America Finance Director. (ECF Dkt. No. 31 "Amended Comp.," ¶ 11). Additionally, Plaintiff's immediate supervisor and/or direct report was WDC's Vice President of Finance Joseph Carrillo, who was based in California. (*Id.,* ¶ 13). This reporting structure, and Plaintiff working for WDC directly, is memorialized in an employment agreement. (*Id.*).

*Second,* the conduct complained of in both the SEC TCR and internal complaints, involved WDC's contracts with Digitron. (*Id.,* ¶ 14). Meaning, the conduct Airton complained about—both internally and externally—had nothing to do with contracts created or maintained in

MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

5

a foreign jurisdiction. Instead, he is directly complaining about contracts WDC—the California based employer—entered in to with another company. (*see Id.,* ¶ 15, describing, in part, WDC's conduct Airton was concerned about). Importantly, WDC's conduct with respect to their Digitron relationship was controlled by decision-makers in California. (*Id.,* ¶ 17, WDC sending out press releases from Irvine, California regarding WDC's and Digitron's relationship). (*see also Id.,* ¶ 21, in which Airton specifically says "[WDC] has contracts with Digitron[...] The issues I am raising in this notification are very serious for [WDC]."). Likewise, Airton's complaint regarding the phishing scam was based on an alleged email from Mark Long—who works out of California. (*Id.,* ¶'s 39-42). And, again, when Airton had suspicions regarding the phishing scam, he discussed his concerns with WDC's Treasury Department based in the United States. (*Id.,* ¶ 47, 54). Airton also, once again, discussed the phishing scam with WDC's California based employees. (*Id.,* ¶s 54-56)

*Third,* when Plaintiff complained internally, he did not complain to people or entities in Brazil. Instead, he complained to the people he worked for in Irvine, California who controlled both WDC and WESTERN DIGITAL DO BRASIL COMERCIO E DISTRIBUICAO DE PRODUTOS DE INFORMATICA LTDA (WD-Brazil). (*Id.,* ¶ 18, 19, 20). This makes sense, as the conduct Plaintiff complained about occurred in California.

*Fourth,* upon receiving Airton's internal complaint, WDC sent attorneys from Gibson Dunn based in Irvine, California to conduct an ostensible investigation. (*Id.,* ¶ 27). They did not hire Brazilian attorneys. The entire investigation was handled by WDC's office and by employees in the United States. (*Id.,* ¶ 28, 30). Likewise, after learning about Airton's engaging

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

6

in protected activity, WDC sent three representatives from the United States to interview Plaintiff. (*Id.,* ¶ 32).

*Fifth,* Plaintiff suffered adverse employment actions that were decided on and/or made in California. (*Id.,* ¶ 67, 72).

In sum, the Court has a series of acts that occurred in the State of California, contracts entered in to in California (both with Digitron and Plaintiff's employment contracts), complaints made internally in California, and employment decisions made in California. There is nothing "extraterritorial" about this case besides Airton residing in Brazil.

Defendants contend that Plaintiff is ineligible for coverage under § 78u-6. To support their contention, Defendants primarily cite to *Liu Meng-Lin*, and its limited progeny, out of the Second Circuit. In *Liu Meng–Lin* the plaintiff was a Taiwanese citizen and resident employed by a Chinese corporation based in China. Liu Meng-Lin v. Siemens AG, 763 F.3d 175 (2d Cir. 2014). And, importantly and unlike the facts here, *Liu Meng-Lin*'s underlying complaint failed to plead that **any** of the events related to his claim occurred within the territorial jurisdiction of the United States (including the actual decision to subject claimant to an adverse action) *Id.* Instead, he alleged Siemens employees in China and North Korea were making improper payments to officials in China and North Korea. *Id.* Simply put, the claim in *Liu Meng-Lin* had nothing to do with the United States. *Liu Meng-Lin* and its progeny are fundamentally different because Plaintiff saw, complained of, and frequently interacted with Defendants' agents in California and was complaining of behavior that could impact WDC shareholders.

    ii.    **Plaintiff Has Stated a Claim for Retaliation Under Dodd-Frank**

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

Plaintiff alleges that he engaged in protected activity by making reports of illegal and fraudulent conduct to the Securities and Exchange Commission. ("SEC").

Section 78u-6(h) prohibits an employer from discharging, harassing, or otherwise discriminating against a "whistleblower" "because of any lawful act done by the whistleblower" in three situations: first, "in providing information to the Commission in accordance with [§ 78u–6]," § 78u–6(h)(1)(A)(i); second, "in initiating, testifying in, or assisting in any investigation or ... action of the Commission based upon" information provided to the SEC in accordance with § 78u–6, § 78u–6(h)(1)(A)(ii); and third, "in making disclosures that are required or protected under" either Sarbanes–Oxley, the Securities Exchange Act of 1934, the criminal anti-retaliation prohibition at 18 U.S.C. § 1513(e), or "any other law, rule, or regulation subject to the jurisdiction of the Commission," § 78u–6(h)(1)(A)(iii). 15 U.S.C. § 78u-6(h).

The Supreme Court recently held that the meaning of "whistleblower" in Dodd Frank's anti-retaliation provision is "any individual who provides . . . information relating to a violation of the securities laws to the [SEC]." Digital Realty Tr., Inc. v. Somers, 138 S. Ct. 767, 777, 200 L. Ed. 2d 15 (2018); 15 U.S.C. § 78u-6(a)(6). ("The term 'whistleblower' means any individual who provides […] information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission." 15 U.S.C.A. § 78u-6).

Thus, to state a claim under Dodd-Frank's anti-retaliation provision a claimant must *first* "provide[e] ... information relating to a violation of securities laws to the Commission" or "his disclosures fell under the four categories listed in Section 78u–6(h)(1)(A)(iii)" (Erhart v. BofI Holding, Inc., No. 15-CV-02287-BAS-NLS, 2020 WL 1550207, at *28 (S.D. Cal. Mar. 31, 2020); Rosenblum v. Thomson Reuters (Markets) LLC, 984 F. Supp. 2d 141, 148 (S.D.N.Y.

MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

8

2013), and *second*, a claimant must allege they were subject to an adverse employment action because of their whistleblower activities. *see* 15 U.S.C.A. § 78u-6 "No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower[…]"

*First,* Plaintiff made many internal complaints regarding suspected bribery and fraud before being termination. (Amended Compl., ¶ 20). This included internal complaint related to unpaid or underpaid taxes. (*Id.,* ¶ 22). Plaintiff then shared information relating to possible violations of securities laws, fraud, and illegal conduct with the Securities and Exchange Commission as well as the Department of Justice. (*see* ECF Dkt. No. 31 "Amended Complaint," ¶ 23, 24).

The type of disclosures Plaintiff made to the SEC are protected under Sarbanes-Oxley and is thus protected by Dodd-Frank. *See* § 78u–6(h)(1)(A)(iii). Plaintiff began seeing Defendants engage in possible fraud and bribery. (*Id.,* ¶ 15). Plaintiff raised concerns to his immediate supervisor to no avail. (*Id.,* ¶ 18, 19). Finally, Plaintiff reported anonymously to higher-ups and reported the possible bribery and fraud to the SEC. (*Id.,* ¶ 20-25). (*see also* §1514A(a)(1), expressly covering complaints relating to 18 U.S.C. §1341 (mail fraud), §1343 (wire fraud), §1344 (bank fraud), §1348 (securities fraud), any rule or regulation of the SEC.).[2]

---

[2] Plaintiff is not required to cite specific code sections violated to show that he engaged in a protected activity. Van Arsdale v. Int'l Game Technology, 577 F.3d 989, 997 (9th Cir. 2009), *citing with approval* Welch v. Chao, 536 F.3d 269, 276 (4th Cir. 2008)("[a]n employee need not cite a code section he believes was violated" to trigger the protections of § 1514A) Erhart v. BofI Holding, Inc., 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017) ("[t]he plaintiff, therefore, 'can have an objectively reasonable belief of a violation' even if the plaintiff 'fails to allege, prove, or approximate specific elements of fraud, which would be required under a fraud claim against the defrauder directly'').

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Second,* it is undisputed that Defendants subjected Plaintiff to an adverse employment action when they:

- Terminated Plaintiff for engaging in protected activity. (Amended Compl., ¶ 75).
- Stripped Plaintiff of his duties. (*Id.,* ¶ 65, 68).
- Took Plaintiff's computer away. (*Id.*, ¶ 67).
- Failed to assist Plaintiff is executing his primary job responsibilities (*Id.*, ¶ 64, 63 *i.e.* failing to facilitate payment request, refusing to invite him to meetings, employees distancing themselves from Plaintiff, etc.).
- Repeatedly lying to Plaintiff (*Id.*).
- Plaintiff specifically tells his supervisor he has been treated as a *suspect* and being made a victim for Defendants' *sordid fraud scheme*. (*Id.*, ¶ 69).
- **After directly complaining to a superior regarding Defendants' retaliating against Plaintiff, Defendants terminated Plaintiff less than a month later**. (*Id.* ¶ 72-76).
- In fact, after directly complaining to a superior regarding Defendants' retaliating against Plaintiff, Defendants' supervisor told Plaintiff that Defendants had "no interest" in keeping him. (*Id.* ¶ 73).
- The termination occurred under further suspicious circumstances as Defendants attempted to frame their termination as a resignation by stating that Plaintiff resigned when, in fact, Plaintiff did not resign. (*Id.* ¶ 76).

Thus, Plaintiff has alleged facts that suggest Defendants engaged in a never-ending parade of retribution until they ultimately terminated Plaintiff.

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

10

Furthermore, Defendants likely had knowledge of Plaintiff engaging in protected activity in that:

- After Plaintiff internally reporting perceiving unlawful activity, Defendants immediately sent a California law firm to interview Plaintiff. (*Id.*, ¶ 27). This alone suggest Plaintiff was Defendants' number one suspect.
- Defendants were notified that the SEC was launching an investigation with Defendants' dealings with Digitron. (*Id.*, ¶ 29).
- The TCR Plaintiff submitted to the SEC incorporated and was based on the same complaint Plaintiff made internally. (*Id.*, ¶ 25). Meaning, the same issues Plaintiff complained about internally, and led to him being interviewed immediately by Defendants, were the same issues the SEC was investigating.
- Defendants' "investigation" continued into November of 2016. (*Id.*, ¶ 32). Defendants interrogated Plaintiff for hours, while only interviews other individuals for 20 minutes. (*Id.*, ¶ 33, 35).
- Plaintiff was an individual who had the exposure and knowledge of the issues raised in the SEC report. (*Id.*, ¶ 34).

These above events suggest that Defendants—at the very minimum—had constructive knowledge of Plaintiff's whistleblowing activity.

Additionally, these circumstances raise an inference of Defendants' retaliatory motives. Immediately after interviewing Plaintiff in relation to his reporting Defendants to the SEC, Defendants began to cut Plaintiff off from meetings. (*Id.*, ¶ 62). Additionally, Defendants began a campaign of isolating Plaintiff. (*Id.*, ¶ 63). Defendants also began to limit Plaintiff's abilities to

MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

11

do his job by, among other acts, taking away Plaintiff's computer. (*Id.*, ¶ 64, 67). Defendants subjected Plaintiff to these adverse actions while leaving other similarly situated employees alone. (*Id.*, ¶ 65). And, with respect to the phishing scam, Defendants treated Plaintiff less favorable than employees who were also victims of phishing scams. (*Id.*, ¶ 65). Ultimately, after treating Plaintiff like a criminal in the wake of the "phishing scam" and subjecting him to a myriad of unfavorable employment actions, Defendants told Plaintiff they had "no interest" in keeping Plaintiff as an employee. (*Id.*, ¶ 73). Defendants' motivations are further questioned in that they lied to Plaintiff and attempted to make it seem as if Plaintiff quit when, in actuality, Defendants terminated Plaintiff. (*Id.*, ¶ 76).

### iii. Plaintiff Has Stated a Claim for Retaliation Under CA Law

Under California's whistle-blower statute, the state maintains a broad public policy interest in encouraging whistle-blowers to report unlawful actions without fear of retaliation. *See* McVeigh v. Recology San Francisco, 213 Cal. App. 4th 443, 468 (2013).

California Labor Code § 98.6 is considered derivative of the § 1102.5 claim, and it would succeed or fail in this case based on the same employer-employee relationship required of § 1102.5. *See* Couch v. Morgan Stanley & Co. Inc., 656 F. App'x 841, 843 (9th Cir. 2016) (finding § 98.6 claim derivative of the plaintiff's §§ 1101(a) and 1102 claims).

To establish a claim, Airton has to show, ultimately, that: (1) he disclosed to a governing body or an employee with authority to investigate, discover, or correct legal violations or noncompliance; (2) Airton had reasonable cause to believe that the information he disclosed was a possible violation of law, rule, or regulation; (3) Defendants subjected him to adverse

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

12

employment acts because of his protected activity. Casissa v. First Republic Bank, No. 09-cv-4129, 2012 WL 3020193, at *9 (N.D. Cal. July 24, 2012) (similar showing under Cal. Labor Code Section 98.6).

To constitute a protected activity pursuant to section 1102.5, a disclosure must be "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b); Smiley v. Hologic, Inc., No. 16CV158-WQH-MDD, 2017 WL 1354787, at *9 (S.D. Cal. Apr. 12, 2017).

Plaintiff relies on and incorporates the same facts as articulated in the above sections but adds that the California law is more encompassing and protects employees who report possible violations of law, rule, or regulation to an employee with authority to investigate. Plaintiff has alleged just that. (*see for example,* Amended Comp., ¶ 20, 21, 57, 59 in which Plaintiff reports to the Board of Directors, high-ranking executives, and his immediate supervisors).

### v.   **Extraterritorial Application**

As detailed above, the Court has a series of alleged acts that occurred in the State of California, contracts entered in to in California (both with Digitron and Plaintiff's employment contracts), complaints made internally in California, and employment decisions made in California. There is nothing "extraterritorial" about this case. The California laws should apply to employer's conduct that occurred in the State of California.

### iv.   **The Court Has Jurisdiction Over WD Brazil**

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

In essence, WD-Brazil operates as a satellite office for WDC. There is no discernable difference between the two entities as leadership, decision making, and meaningful business for both entities all occur within this Court's jurisdiction. Thus, this Court can exercise general and specific jurisdiction over WD-Brazil.

A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. See International Shoe, 326 U.S., at 317, 66 S.Ct. 154. Here, any contact Plaintiff had with WDC is contact WD-Brazil had with the forum state. Thus, contact between WD-Brazil is continuous and systematic as to render them at home in California, as Plaintiff has been working for these entities since 2012. (Amended Compl., ¶ 10).

WD-Brazil's contacts with California were so continuous and systematic, they essentially fully-operate from California. For example: WDC is the head corporation, controlling Plaintiff and other Brazilian-based employees from their California offices. (*Id.,* ¶ 11). WDC fully owns and operates WD Brazil. (*Id.,* ¶ 9). **WDC fully manages and operates WD Brazil from their offices in California**. (*Id.,* ¶ 10). Thus, WDC controls the approximately15 employees they have based in Brazil under the WD-Brazil name. (*Id.,* ¶ 11, 34). WD-Brazil helps oversee the business of WDC from Latin America (this is why Plaintiff was hired as the Latin America Finance Director and worked under the supervision of Joseph Carrillo, **who is based in California** [*Id.,* ¶ 11-13]). Therefore, business that is developed in California is given to Plaintiff and others to support. For example, the contract between WDC and Digitron was created in California and all-important aspects of the professional relationship between Digitron and WDC were handled in

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

the United States. (*Id.,* ¶ 17). Thus, all of Plaintiff's job responsibilities for his joint employer focused almost exclusively on contracts entered in to in California and decisions made in California.

And, tellingly, when Plaintiff had a suspicion of fraud and possible bribery, he did not complain to a corporate entity in Brazil—he complained to WDC's executives, directors, and auditors in California. (*Id.,* ¶ 20). He did this because WDC and WD-Brazil are essentially one-in-the-same, with the entities' leadership in California.

Again, WD-Brazil was a satellite office for WDC. Because of the leadership structure and the fact that WDC controls employees in foreign countries, it is no surprise to WDC's foreign subsidiaries that they may be called into Court in the United States. These joint-employers work in tandem to employ Plaintiff. (*Id.,* ¶ 8). WDC retained these employees to work on business that originates and is overseen by WDC in California. It should be no shock to WD-Brazil that they may be called into Court in relation to their continuous contacts with WDC and the State of California.

Additionally, this Court can exercise specific jurisdiction over WD-Brazil. "Specific jurisdiction depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (internal quotes and citations omitted). For reason articulated above, Plaintiff was hired, worked under, and was terminated all based-on decision made in the State of California (and the subject matter Plaintiff complained about

**MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**

related to contracts entered in to in California). The activity and occurrence giving rise to this action all took place within this Court's jurisdiction.

### IV. Conclusion

For the above aforementioned reasons, this Court should **DENY** Defendants' Motion to Dismiss.

*Alternatively*

In the alternative, and should the Court grant Defendants' Motion, Plaintiff respectfully requests the right to amend his pleadings or dismiss these claims without prejudice to allow Plaintiff to pursue these matters in California State Court.

Date:  May 21, 2021
       San Francisco, California

                                        Respectfully Submitted,

                                        **DEREK SMITH LAW GROUP, PLLC**

                                        */s/ Alexander G. Cabeceiras*
                                        Alexander G. Cabeceiras, Esq.

**MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**