Laura G. Ferguson (*pro hac vice*)
lferguson@milchev.com
Dawn E. Murphy-Johnson (*pro hac vice*)
dmurphyjohnson@milchev.com
MILLER & CHEVALIER CHARTERED
900 16th Street NW
Black Lives Matter Plaza
Washington, DC 20006
Tel: 202-626-5800
Fax: 202-626-5801

Carolyn A. Knox (SBN 181317)
carolyn.knox@ogletree.com
Andrew M. Massara (SBN 282913)
andrew.massara@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Tel: 415-442-4810
Fax: 415-442-4870

*Counsel for Defendants Western Digital Corporation and*
*Western Digital do Brasil Comércio e Distribuição de Produtos de Informática Ltda*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AIRTON AMORIM DE ALMEIDA,<br><br>        Plaintiff,<br><br>    v.<br><br>WESTERN DIGITAL CORPORATION,<br><br>        Defendant. | Case No. 3:20-cv-4735-RS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Next Event:   Motion Hearing<br>Date:          June 17, 2021<br>Time:          1:30 p.m.<br>Courtroom:   Videoconference |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ........................................................................................................................ 2

I.     THE COURT LACKS PERSONAL JURISDICTION OVER WD BRAZIL ................. 2

       A.     WD Brazil Is Not Subject to General Jurisdiction, and WDC's
              Jurisdictional Contacts May Not Be Imputed to WD Brazil to Establish
              General Jurisdiction ........................................................................................ 2

       B.     WD Brazil Is Not Subject to Specific Jurisdiction ................................................. 5

II.    THE COURT SHOULD DISMISS ALMEIDA'S FEDERAL DODD-FRANK
       RETALIATION CLAIM (COUNT ONE) ........................................................... 6

       A.     The Amended Complaint's Dodd-Frank Claim Is Impermissibly
              Extraterritorial ................................................................................................ 6

       B.     The Amended Complaint Fails to State a Claim under Dodd-Frank .................... 8

III.   THE COURT SHOULD DISMISS ALMEIDA'S STATE-LAW CLAIMS (COUNTS
       TWO AND THREE) ....................................................................................... 12

       A.     Almeida's California Claims Are Impermissibly Extraterritorial ...................... 12

       B.     Counts Two and Three Must Be Dismissed for Failure to State a Claim ............ 13

IV.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH
       PREJUDICE ................................................................................................. 14

CONCLUSION ...................................................................................................................... 15

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asadi v. G.E. Energy (USA), LLC*,
    No. 12-cv-345, 2012 WL 2522599 (S.D. Tex. June 28, 2012)..................................................8

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987)...................................................................................................................6

*Banko v. Apple Inc.*,
    20 F. Supp. 3d 749 (N.D. Cal. 2013) (Seeborg, J.)..............................................................8, 9

*Bonin v. Calderon*,
    59 F.3d 815 (9th Cir. 1995) .....................................................................................................15

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
    137 S. Ct. 1773 (2017)...............................................................................................................6

*Caracal Enters. LLC v. Suranyi*,
    No. 16-cv-05073, 2017 WL 446313 (N.D. Cal. Feb. 2, 2017) (Seeborg, J.)...........................5

*Cellucci v. O'Leary*,
    No. 19-cv-2752, 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020) ...........................................9, 12

*Cohen v. Fred Meyer, Inc.*,
    686 F.2d 793 (9th Cir. 1982) ...................................................................................................12

*Curtis v. Cafe Enters., Inc.*,
    No. 15-cv-32, 2016 WL 6916786 (W.D.N.C. Nov. 21, 2016), *aff'd*, 715 F.
    App'x 268 (4th Cir. 2017) .......................................................................................................10

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...............................................................................................................2, 3

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
    968 P.2d 539 (Cal. 1999) .........................................................................................................13

*Digit. Realty Tr., Inc. v. Somers.*,
    138 S. Ct. 767 (2018) .................................................................................................................9

*Erhart v. BofI Holding, Inc.*,
    269 F. Supp. 3d 1059 (S.D. Cal. 2017)...................................................................................10

*Fitzpatrick v. Milwaukee Sch. of Eng'g*,
    No. 18-cv-0541, 2020 WL 7060133 (E.D. Wis. Dec. 2, 2020) ...............................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).............................................................................................................2, 5

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

*Griggs v. Pace Am. Grp., Inc.*,
    170 F.3d 877 (9th Cir. 1999) ......................................................................... 14

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ...................................................................................... 6

*Jeanette Coquette Co. v. Hartford Fire Ins. Co.*,
    No. 93-cv-4418, 1995 U.S. Dist. LEXIS 8324 (S.D.N.Y. June 19, 1995) ........................... 15

*Lawrence v. IBM Corp.*,
    No. 12cv8433, 2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017) ........................................ 10

*Lee v. Eden Med. Ctr.*,
    690 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................. 11

*Liu Meng-Lin v. Siemens AG*,
    763 F.3d 175 (2d Cir. 2014) ........................................................................... 8

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ....................................................................... 14

*Marx v. Storage Tech. Corp.*,
    Nos. B178202, B182100, 2006 WL 3222499 (Cal. Ct. App. Nov. 8, 2006) ........................ 14

*Miglani v. Edwards Lifesciences, LLC*,
    No. 17-cv-418, 2018 WL 6265007 (C.D. Cal. Jan. 8, 2018) ..................................... 9, 12

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ......................................................................... 5

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) .................................................................................... 6, 7

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ........................................................................... 8

*N. Alaska Salmon Co. v. Pillsbury*,
    162 P. 93 (Cal. 1916) ................................................................................. 13

*Nieves v. City of Oakland*,
    No. A144592, 2016 WL 6879282 (Cal. Ct. App. Nov. 22, 2016) ................................. 14

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ................................................................... 1, 2, 3, 4

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    136 S. Ct. 2090 (2016) ................................................................................ 6, 7

*Rocheleau v. Microsemi Corp.*,
    680 Fed. App'x 533 (9th Cir. 2017) .................................................................. 10

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

*Solis v. City of Sunnyvale*,
 No. 20-cv-3912, 2020 WL 7353698 (N.D. Cal. Dec. 14, 2020)...........................................15

*Sullivan v. Oracle Corp.*,
 254 P.3d 237 (Cal. 2011) ...................................................................................................13

*Tasadfoy v. Ruggiero*,
 365 F. Supp. 2d 542 (S.D.N.Y. 2005)..................................................................................11

*In re Tracht Gut, LLC*,
 836 F.3d 1146 (9th Cir. 2016) ............................................................................................15

*Ulrich v. Moody's Corp.*,
 721 F. App'x 17 (2d Cir. 2018) .............................................................................................8

*United States v. Hussain*,
 972 F.3d 1138 (9th Cir. 2020) ...........................................................................................6, 7

*Walden v. Fiore*,
 571 U.S. 277 (2014)..............................................................................................................6

*Ward v. United Airlines, Inc.*,
 466 P.3d 309 (Cal. 2020) ...................................................................................................13

*Williams v. Yamaha Motor Co.*,
 851 F.3d 1015 (9th Cir. 2017) ...........................................................................................3, 4

*Wood v. iGATE Techs., Inc.*,
 No. 15-cv-799, 2016 WL 3548410 (N.D. Cal. June 30, 2016)............................................13

**Statutes**

15 U.S.C. § 78u-6(a)(6) ...............................................................................................................9

15 U.S.C. § 78u-6(h)............................................................................................1, 7, 8, 13

28 U.S.C. § 1367(c)(3)................................................................................................................12

Cal. Lab. Code § 1102.5 .............................................................................................................14

**Other Authorities**

17 C.F.R. § 240.21F-2 ................................................................................................................10

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

# INTRODUCTION

This case arises out of an employment dispute between Plaintiff Airton Amorim de Almeida, a Brazilian citizen, and his former employer, Defendant Western Digital do Brasil Comércio e Distribuição de Produtos de Informática Ltda ("WD Brazil"), the Brazilian subsidiary of Defendant Western Digital Corporation ("WDC").  After causing the company a $2 million loss from unwitting participation in a phishing scam, Almeida offered to resign, then backtracked, then reached a mutual understanding with WD Brazil to end his employment.  *See* Am. Compl. ¶¶ 42, 49–50, 68–74, ECF No. 31.

Almeida now attempts to bring his Brazilian employment dispute to the United States by ignoring "a basic tenet of American corporate law" that a parent corporation and its subsidiary are distinct entities.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).  Throughout his Amended Complaint, Almeida blurs the distinction between WDC and WD Brazil and even asks the Court to assert personal jurisdiction over WD Brazil by imputing some of WDC's jurisdictional contacts to WD Brazil under an alter ego theory.  The Amended Complaint, however, fails to make sufficient allegations to overcome the presumption that WDC and WD Brazil are distinct entities.  Accordingly, WD Brazil's motion to dismiss for lack of personal jurisdiction should be granted.

With respect to Defendants' arguments that Almeida fails to state a claim under Dodd-Frank's anti-retaliation provision, 15 U.S.C. § 78u-6(h), Almeida essentially concedes that the statute does not apply extraterritorially.  Instead, he asserts that his claim involves domestic conduct, but the allegations in the Amended Complaint do not permit that characterization.  Almeida's alleged "whistleblowing" related to concerns that a third-party contract manufacturer in Brazil (Digitron) had supposedly defrauded Brazilian tax authorities and the alleged "retaliation" was the termination of his employment in Brazil.

Almeida's opposition fails to address Defendants' additional arguments that the Amended Complaint does not adequately allege he qualifies as a whistleblower.  Fatal to Almeida's Dodd-Frank claim, it remains unstated how his concerns about Brazilian tax fraud by third party Digitron related to a supposed violation of U.S. securities laws by WDC or WD

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Brazil.  Moreover, Almeida's opposition ignores Defendants' arguments that the intervening

event of Almeida's role in the $2 million loss from a phishing scam precludes any inference that

his earlier submission of the Tip, Complaint or Referral to the U.S. Securities and Exchange

Commission regarding the alleged Digitron Brazilian tax fraud caused Almeida's separation

from WD Brazil.

**ARGUMENT**

**I.     THE COURT LACKS PERSONAL JURISDICTION OVER WD BRAZIL**

     **A.     WD Brazil Is Not Subject to General Jurisdiction, and WDC's Jurisdictional Contacts May Not Be Imputed to WD Brazil to Establish General Jurisdiction**

Almeida's opposition to WD Brazil's motion to dismiss for lack of personal jurisdiction

does not even attempt to argue that WD Brazil's own jurisdictional contacts meet the Supreme

Court's test for the exercise of general personal jurisdiction.  *See* Mem. Opp'n Defs.' Mot.

Dismiss 14–15, ECF No. 44 (hereinafter "Opp.").  For the Court to exercise general personal

jurisdiction over WD Brazil, its affiliations with the forum must be so continuous and

systematic as to render it "essentially at home" in the forum.  *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  In all but the most extraordinary

circumstances, a corporation will be "essentially at home" only in a forum state in which it is

incorporated or has its principle place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 137,

139 n.19 (2014); *accord Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).  The

Amended Complaint does not allege that WD Brazil is incorporated or has its principle place of

business in California, but rather readily acknowledges WD Brazil is a *Brazilian* corporation,

with its office in *Brazil*.  Am. Compl. ¶ 7, ECF No. 31 (WD Brazil "was and is a foreign

corporation duly existing by the virtue and laws of the country of Brazil"); *id.* ¶ 21 ("WD Brazil

has a sales office in Brazil").

Almeida instead asserts that WDC and WD Brazil are "essentially one-in-the-same."

Opp. at 15; *see also id.* at 14 (claiming there is "no discernible difference between the two

entities").  Almeida does not argue, however, that *all* WDC's jurisdictional contacts should be

imputed to WD Brazil.  Instead, he argues:  "Here, any contact Plaintiff had with WDC is

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

1   contact WD-Brazil had with the forum state.  Thus, contact between WD-Brazil is continuous

2   and systematic as to render them at home in California, as Plaintiff has been working for these

3   entities since 2012."  *Id.*  But even assuming Almeida's supposed contacts with WDC could be

4   imputed to WD Brazil, those contacts are insufficient to make WD Brazil "at home" in

5   California.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022 (9th Cir. 2017) ("even

6   assuming [the subsidiary's] contacts could be imputed to [the foreign parent corporation], this

7   does not, on its own, suffice to establish general jurisdiction.  In *Daimler*, the Court assumed

8   that the subsidiary's in-state contacts could be imputed to the foreign parent, but nevertheless

9   found the exercise of general jurisdiction inappropriate.") (citing *Daimler*, 571 U.S. at 136).

10  Almeida cites *International Shoe*'s continuous and systematic test for jurisdiction, Opp. at 14,

11  but the Supreme Court has rejected that test as "unacceptably grasping" in favor of the "at

12  home" test for general jurisdiction.  *Daimler*, 571 U.S. at 138.

13       In any event, WDC's jurisdictional contacts may not be imputed to WD Brazil unless the

14  two entities are alter egos.  "The existence of a parent-subsidiary relationship is insufficient, on

15  its own, to justify imputing one entity's contacts with a forum state to another for the purpose of

16  establishing personal jurisdiction."  *Ranza*, 793 F.3d at 1070.  Before the Supreme

17  Court's *Daimler* decision, the Ninth Circuit "permitted a plaintiff to pierce the corporate veil for

18  jurisdictional purposes and attribute a local entity's contacts to its out-of-state affiliate under one

19  of two separate tests: the 'agency' test and the 'alter ego' test."  *Id.* at 1071.  Because *Daimler*

20  rejected the agency test, now jurisdictional contacts may be imputed to a corporate affiliate only

21  by satisfying an alter ego test.  *Id.*

22       The Amended Complaint does not allege a basis for treating WDC and WD Brazil as

23  alter egos.  As Defendants highlighted in their motion to dismiss (*see* Defs.' Notice Mot.

24  Dismiss Am. Compl; Mem. P. & A. Supp. 9–10, ECF No. 40) (hereinafter "MTD"), the Ninth

25  Circuit's decision in *Ranza* is decisive:  "[t]otal ownership and shared management personnel

26  are alone insufficient to establish the requisite level of control," even when the parent

27  corporation is "heavily involved" in its subsidiary's operations.  *Ranza,* 793 F.3d at 1074.

28  Instead, for an alter ego relationship to exist between a parent corporation and its subsidiary, the

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

former must exercise "pervasive control" over the latter.  *Id.* at 1073.  Pervasive control exists "when the parent corporation dictates *every facet* of the subsidiary's business — from broad policy decisions to routine matters of day-to-day operation."  *Id.* (emphasis added, internal quotation marks omitted).

Notably, Almeida fails even to acknowledge *Ranza*, which is controlling precedent on the ability to impute jurisdictional contacts to a corporate affiliate.  Moreover, the Amended Complaint fails to allege facts that would satisfy *Ranza*'s alter ego test.  The Amended Complaint alleges in conclusory fashion that "WDC completely manages and operates WD Brazil," Am. Compl. ¶ 10, ECF No. 31, which Almeida echoes in his opposition papers.  *See*, *e.g.*, Opp. at 14 (WDC is "the head corporation, controlling Plaintiff and other Brazilian-based employees from their California offices") (citing Am. Compl. ¶ 11, ECF No. 31); *id.* ("WDC fully manages and operates WD Brazil from their offices in California") (citing Am. Compl. ¶ 10, ECF No. 31).  But, under *Ranza*, those bare allegations are insufficient.  Almeida has set forth no *facts* demonstrating that WDC dictates everything from WD Brazil's "broad policy decisions," to its "routine matters of day-to-day operation."  *Ranza*, 793 F.3d at 1073.

*Williams*, which follows *Ranza*, is squarely on point.  There, the plaintiffs alleged that the jurisdictional contacts of Yamaha's U.S. subsidiary (YMUS) should be imputed to the parent company in Japan (YMC) based on an alter ego theory.  The Ninth Circuit held that the imputation was not warranted because the plaintiffs failed "to plead facts sufficient to make out a prima facie case that YMC and YMUS are 'alter egos.'  [The] complaint makes almost no factual allegations regarding the nature of the parent-subsidiary relationship, and the evidence Appellants submitted in opposition to YMC's motion to dismiss did not provide any additional clarity."  *Williams*, 851 F.3d at 1022.  Indeed, it would be extremely unusual for a court to pierce the corporate veil of a major U.S. multinational corporation and hail its foreign subsidiaries into U.S. court.  The Amended Complaint must do more than vaguely and conclusorily allege control to warrant such an outcome here.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

**B.      WD Brazil Is Not Subject to Specific Jurisdiction**

Almeida fares no better with specific jurisdiction.  Relying on only one case (*Goodyear*), Almeida's entire argument is that he

> was hired, worked under, and was terminated all based-on decisions made in the State of California (and the subject matter Plaintiff complained about related to contracts entered in to in California).  The activity and occurrence giving rise to this action all took place within this Court's jurisdiction.

Opp. at 15–16.  For several reasons, this argument must be rejected.

First, Almeida's contentions are not supported by his own allegations.  In short, Almeida worked in Brazil, the "subject matter he complained about" concerned an alleged Brazilian tax scheme, and his employment was terminated (years later) in Brazil—prompted by his offer of resignation, not based on a unilateral decision "made in the State of California."  Am. Compl. ¶¶ 4, 11–12, 15, 21, 73–74, ECF No. 31.  And, to the extent relevant, Almeida did not "work[] under" anyone in California.  Opp. at 15.  Although the Amended Complaint asserts that, per his written employment agreement, he "was to" report to "Joseph Carrillo, who is based in California," Am. Compl. ¶ 13, ECF No. 31, Almeida has made clear that Graham Holmes was his actual supervisor.  *See*, *e.g.*, *id.* ¶¶ 42, 51, 64, 69, 73, 76.  Defendants highlighted this discrepancy in their motion to dismiss, along with the fact that the Amended Complaint does not mention where (geographically) Holmes works, but Almeida has remained conspicuously silent.

Second, even if Almeida's throw-away argument on specific jurisdiction were supported by factual allegations, it fails to address the Ninth Circuit's three-part test, at all.  Almeida must show that:  (1) WD Brazil purposefully directed its activities toward California; (2) this case arises out of or relates to WD Brazil's California-related activities; and (3) the exercise of jurisdiction would be reasonable.  MTD at 10 (citing *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141–42 (9th Cir. 2017)).  As explained above, Almeida cannot proceed on an alter-ego theory, and he has alleged zero actions taken by WD Brazil targeting California.  Moreover, any harm to Almeida was likely to be felt in Brazil, not California.  *See Caracal Enters. LLC v. Suranyi*, No. 16-cv-05073, 2017 WL 446313, at *2 (N.D. Cal. Feb. 2, 2017) (Seeborg, J.) (no showing

1  that "acts were expressly targeted at California or that [defendant] knew the harm flowing from

2  those acts was likely to be felt in California.").

3      Regardless, the exercise of specific jurisdiction would not be reasonable here.  WD

4  Brazil should not be required to litigate in "a foreign nation's judicial system," especially when

5  California has no interest in an employment dispute between a Brazilian company and its former

6  Brazilian employee.  *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987).

7  Finally, it is irrelevant whether it comes as a "surprise" or "shock" to WD Brazil to be sued in

8  the United States.  Opp. at 15.  The Supreme Court has consistently rejected foreseeability as a

9  standard for personal jurisdiction.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,

10  137 S. Ct. 1773 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014); *J. McIntyre Mach., Ltd. v.*

11  *Nicastro*, 564 U.S. 873 (2011).

## II.    THE COURT SHOULD DISMISS ALMEIDA'S FEDERAL DODD-FRANK RETALIATION CLAIM (COUNT ONE)

### A.    The Amended Complaint's Dodd-Frank Claim Is Impermissibly Extraterritorial

15      In their opening brief, Defendants argued that the Dodd-Frank anti-retaliation provision

16  does not apply extraterritorially and that the Amended Complaint is based on extraterritorial

17  conduct.  MTD at 14–19.  As explained there, the Supreme Court has devised a "two-step

18  framework for analyzing issues of extraterritoriality."  *United States v. Hussain*, 972 F.3d 1138,

19  1142 (9th Cir. 2020) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 262–65 (2010),

20  and *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090, 2101 (2016)).  First, the court must

21  determine "whether the presumption against extraterritoriality has been rebutted—that is,

22  whether the statute gives a clear, affirmative indication that it applies extraterritorially."  *Id.*  If

23  not, then, second, the court must decide "whether the case involves a domestic application of the

24  statute by looking to the statute's focus."  *Id.* (internal quotation marks omitted).

25      In his opposition, Almeida does not even engage with the Supreme Court's test for

26  extraterritoriality.  According to the opposition, the "Court does not have to grapple with such

27  questions in Airton's case, as the acts that give rise to this action occurred *inside* the United

28  States, specifically in the State of California."  Opp. at 5.  To the contrary, and as explained at

1    length in Defendants' motion, any acts giving rise to this case occurred in Brazil.  In particular,

2    the specific "act" at the root of Almeida's legal claims is that his employment was terminated

3    after he engaged in protected activity.  That "act," *i.e.*, his termination, occurred in Brazil.  And

4    to the extent that he engaged in any protected activity, that "act" occurred in Brazil, too.  Indeed,

5    Almeida never once acknowledges the litany of acts that took place in Brazil:  (i) he worked in

6    Brazil, for a company called "WD Brazil;" (ii) he was concerned that a Brazilian manufacturer

7    was allegedly involved in a fraudulent Brazilian tax scheme; (iii) he reported his concerns to the

8    SEC from Brazil; and (iv) his employment terminated in Brazil.  Thus, Almeida did not just

9    "resid[e]" in Brazil, Opp. at 7; *every key event* underlying his Amended Complaint took place in

10   Brazil.

11          Accordingly, the Court must evaluate whether his claims are impermissibly

12   extraterritorial according to the two-part test set out by the Supreme Court in *Morrison* and *RJR*

13   *Nabisco*.  As the Ninth Circuit explained in *Hussain*:

14                 If a statute is not extraterritorial under *Morrison* step one, the
                   question under step two becomes *whether the conduct that is*
15                 *proscribed took place in this country to a sufficient extent*:  "If the
                   conduct relevant to the statute's focus occurred in the United States,
16                 then the case involves a permissible domestic application even if
                   other conduct occurred abroad; but *if the conduct relevant to the*
17                 *focus occurred in a foreign country, then the case involves an*
                   *impermissible extraterritorial application regardless of any other*
18                 *conduct that occurred in U.S. territory*."

19

20   972 F.3d at 1142 (quoting *RJR Nabisco*, 136 S. Ct. at 2101) (emphasis added).  Here, "the

21   conduct that is proscribed" under § 78u-6(h) is whistleblower retaliation.  Not a single U.S.-

22   based "fact" on which Almeida relies in his opposition papers (*see* Opp. at 6–7)—under whom

23   he purportedly worked in WDC's reporting structure, who controlled the contractual

24   relationship with Digitron, whether Almeida reported his concerns to WDC personnel in

25   California, or who ran the internal investigation of his claims—concerns that proscribed act.  In

26   a nutshell, Almeida was purportedly retaliated against when his employment, in Brazil, was

27   terminated, in Brazil, after he submitted to the Securities and Exchange Commission ("SEC") a

28   Tip, Complaint or Referral ("TCR"), from Brazil.

Nor does it matter that Almeida "suffered adverse employment actions that were decided on and/or made in California." *Id.* at 7. Again, no factual allegations in the Amended Complaint support this assertion, and, more to the point, where any *decision* was made to terminate Almeida is irrelevant, when his employment was *actually terminated* in Brazil. *See Asadi v. G.E. Energy (USA), LLC*, No. 12-cv-345, 2012 WL 2522599, at *2, *5 (S.D. Tex. June 28, 2012) (§ 78u-6(h) did not extend to "U.S.-based employee" of a U.S. company, who was terminated by an email invoking U.S. employment law and sent from the U.S., when the email was sent to employee in Jordan and was related to his employment in Jordan). Here, too, the "*relevant conduct* occurred abroad," meaning "that is simply the end of the matter." *Mujica v. AirScan Inc.*, 771 F.3d 580, 594 (9th Cir. 2014) (emphasis added); *see also Ulrich v. Moody's Corp.*, 721 F. App'x 17, 19 (2d Cir. 2018) ("although Ulrich, a United States citizen who sometimes interacted with Moody's United States managers, did allege more connection with the United States than was evident in *Liu*, he was nevertheless an overseas permanent resident working for a foreign subsidiary of Moody's, and the alleged wrongdoing and protected activity took place outside the United States").

At the end of his argument on extraterritoriality, Almeida takes issue with Defendants' reliance on the Second Circuit's decision in *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175 (2d Cir. 2014), by observing that that case did not involve allegations of U.S. conduct. Opp. at 7. Defendants principally relied on *Liu* for its holding that § 78u-6(h)'s text does not overcome the presumption against extraterritoriality (the first part of the Supreme Court's two-step framework), an argument which Almeida apparently concedes. Almeida makes no attempt to distinguish other cases on which Defendants relied that involved allegations of U.S. conduct. *See* MTD at 18–19 (citing *Asadi*, 2012 WL 2522599; *Ulrich*, 721 F. App'x 17).

## B.     The Amended Complaint Fails to State a Claim under Dodd-Frank

Almeida was required to plead in his Amended Complaint facts establishing that he meets Dodd-Frank's definition of "whistleblower." *Banko v. Apple Inc.*, 20 F. Supp. 3d 749, 757 (N.D. Cal. 2013) (Seeborg, J.). Only after making such a showing would the inquiry proceed to the elements of a Dodd-Frank retaliation claim, which requires alleging facts

establishing that:  (1) the "[whistleblower] engaged in protected activity" and (2) "suffered a materially adverse employment action," and (3) the adverse employment action was "causal[ly] connect[ed]" to the protected activity.  *Miglani v. Edwards Lifesciences, LLC*, No. 17-cv-418, 2018 WL 6265007, at *3 (C.D. Cal. Jan. 8, 2018); *see also* MTD at 19 (collecting cases).  Here again, Almeida tries to make his case by omission.

  ***First***, Almeida does not acknowledge this Court's holding in *Banko*, much less articulate how he meets the statutory definition of "whistleblower."  To qualify as a Dodd-Frank "whistleblower," Almeida must allege that he submitted to the SEC information "relating to a violation *of the securities laws*."  15 U.S.C. § 78u-6(a)(6) (emphasis added); *Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777 (2018).  In his opposition papers, Almeida retorts that he is "not required to cite specific code section . . . to show that he engaged in a protected activity," Opp. at 9 n.2, and states merely that he "shared information relating to possible violations of securities laws" with the SEC.  *Id.* at 9.  But, even after Defendants highlighted in their motion that Almeida has provided only conclusory assertions regarding the content of his TCR, MTD at 20–21, Almeida has remained "reticen[t]" to provide "[any] factual detail."  *Cellucci v. O'Leary*, No. 19-cv-2752, 2020 WL 977986, at *10 (S.D.N.Y. Feb. 28, 2020).  This lack of detail is "exceptionally curious, as [plaintiff] should know well the contents of his own complaint [to the SEC]."  *Id.*  And, without additional details, this Court cannot "assess whether he was complaining of conduct that is even arguably within the scope of . . . Dodd-Frank."  *Id.* Regardless, *see* MTD at 21, even assuming that Almeida's TCR described his concerns that Digitron, a Brazilian company, engaged in fraud and/or bribery in Brazil to avoid payment of Brazilian taxes, "it is hard to see how [that] conduct could possibly be a 'violation of the securities laws' as required by the statute."  *Fitzpatrick v. Milwaukee Sch. of Eng'g*, No. 18-cv-0541, 2020 WL 7060133, at *7 (E.D. Wis. Dec. 2, 2020) (quoting 15 U.S.C. § 78u-6(a)(6)).

  ***Second***, Almeida completely skips over any discussion of whether he alleged in the Amended Complaint facts sufficient to show that he engaged in "protected activity"—in particular, that he had both a subjectively and objectively "*reasonabl[e] belie[f]*" that the information [he] provide[d] to the Commission . . . relate[d] to a possible violation of the federal

1   securities laws." 17 C.F.R. § 240.21F-2(d)(1)(ii). The "reasonable belief" standard "involves

2   both a subjective component and an objective component." *Erhart v. BofI Holding, Inc.,* 269 F.

3   Supp. 3d 1059, 1072 (S.D. Cal. 2017) (internal quotation marks omitted).

4        Defendants also raised this lack of detail in their motion to dismiss, *see* MTD at 21–22,

5   and by failing to address it in his opposition brief, Almeida has waived his opportunity to

6   respond.  In any event, even if Almeida could get past the subjective prong of the test with the

7   Amended Complaint's conclusory allegation that he "reasonably believed" the reported conduct

8   "to be illegal or unlawful conduct in violation of state and federal statutes, rules and

9   regulations," and even assuming that he reported the purported tax scheme in Brazil, he still has

10   not alleged that a reasonable person in his position would have believed that conduct constituted

11   a violation of the U.S. securities laws, which would have required a belief that Digitron's

12   actions "approximated the elements of [a securities law violation]." *Rocheleau v. Microsemi*

13   *Corp.*, 680 Fed. App'x 533, 536 (9th Cir. 2017); *see also Lawrence v. IBM Corp.*, No.

14   12cv8433, 2017 WL 3278917, at *10 (S.D.N.Y. Aug. 1, 2017) ("to be reasonable, the purported

15   whistleblower's belief cannot exist wholly untethered from these specific provisions" of the

16   securities laws).

17        **Third**, although Almeida claims that the Amended Complaint alleges he suffered a

18   materially adverse employment action, the allegations he cites in a series of bullet points are

19   nothing but a list of red herrings.  *See* Opp. at 10.  Regarding the allegation that Almeida was

20   "terminated," *id.*, the Amended Complaint alleges that Almeida met with his supervisor in

21   December 2017 to discuss his "decision to leave the company."  *See* Am. Compl. ¶ 71, ECF No.

22   31.  Later that month, WD Brazil "processed" his "resignation terms and pay."  *Id.* ¶ 76. Thus,

23   he "was not discharged" and has no claim that the termination was wrongful or retaliatory.

24   *Curtis v. Cafe Enters., Inc.*, No. 15-cv-32, 2016 WL 6916786, at *9 (W.D.N.C. Nov. 21, 2016),

25   *aff'd*, 715 F. App'x 268 (4th Cir. 2017).  Defendants made this point in their motion to dismiss,

26   and Almeida has failed to respond.

27        As for the remaining allegations—in which Almeida asserts that he was stripped of his

28   duties, had his computer taken away, was deprived of assistance in executing his primary job

1    responsibilities, was lied to, and that he told his supervisor (Graham Holmes) that he had been

2    treated like a "suspect" (Opp. at 10)—Almeida fails to mention that those purportedly

3    retaliatory actions took place in 2017, more than a year after he purportedly submitted his TCR

4    to the SEC, and *in the wake of a phishing scam to which Almeida fell prey that resulted in WD*

5    *Brazil being defrauded $2 million.*  Am. Compl. ¶¶ 38–50, ECF No. 31.  Those late 2017

6    actions were unrelated to his June 2016 TCR, as the timeline laid out in his own Amended

7    Complaint makes quite clear.  *See id.* ¶¶ 65, 67–69.[1]

8           Relatedly, ***fourth***, Almeida leaves unmentioned the utter lack of temporal proximity

9    between the TCR and his termination.  He never addresses the body of case law cited by

10   Defendants reflecting that in the Ninth Circuit, periods as short as four months defeat any

11   plausible claim that a plaintiff's protected activity could have been a contributing factor in his

12   termination.  *See* MTD at 24 (collecting cases).  Here, the gap was even longer; Almeida

13   submitted his TCR to the SEC on June 16, 2016 and his employment terminated a year and a

14   half later, in December 2017.

15          Even assuming Almeida could get past that hurdle, any inference of causation between

16   Almeida's alleged whistleblowing activity and purported discharge is defeated as a result of his

17   role in the phishing scam.  Because "there was an intervening causal event that occurred

18   between the protected activity and the allegedly retaliatory discharge," *Tasadfoy v. Ruggiero*,

19   365 F. Supp. 2d 542, 551 (S.D.N.Y. 2005), "any inference that Plaintiff's complaint caused the

20   subsequent adverse action" is negated.  *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1026

21   (N.D. Cal. 2010).  Almeida tries to characterize his demands that Defendants report the phishing

22   scam to Brazilian authorities as additional "whistleblowing" activities and then tries to tie the

23   fallout from the phishing scam as continued retaliation stemming from his supposed SEC

24   whistleblowing activity.  The phishing scam does not qualify him as a Dodd-Frank

25   whistleblower, however, because the fraud is altogether unconnected to any potential violations

26   of the U.S. securities laws and was not the subject of any submission by Almeida to the SEC.

27   _____

28   [1] The same goes for the paragraph in which Almeida repeats these same points and attempts to
     tie them to the TCR.  *See* Opp. at 11–12.

1   Further, any purported retaliation after the scam cannot have been a continuation of TCR-related

2   retaliation; Almeida never points to a single retaliatory action taken prior to the phishing scam,

3   so there was nothing to continue.  *See* Am. Compl. ¶¶ 62–68, ECF No. 31.

4        ***Fifth***, Almeida fails to point to facts alleged in the Amended Complaint that would

5   satisfy the second aspect of the causal-connection requirement, *i.e.*, "that the employer was

6   aware that the plaintiff had engaged in the protected activity."  *Miglani*, 2018 WL 6265007, at

7   *4 (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)).  To be sure,

8   Almeida refers to scattered Amended Complaint allegations in additional bullet points on page

9   11 of his brief, claiming they show "Defendants likely had knowledge of Plaintiff engaging in

10  protected activity."  Opp. at 11.  This list should be disregarded too, as it relies on conjecture

11  and glosses over the actual facts:  Almeida submitted his TCR to the SEC confidentially, *see*

12  *Cellucci*, 2020 WL 977986, at *11 (the SEC is "obligated to maintain the confidentiality of all

13  reports"), and he relayed his concerns internally without revealing his identity.  Am. Compl.

14  ¶¶ 20, 27, ECF No. 31.  In such circumstances, there can be no inference of "retaliatory bias or

15  motive on the part of . . . the decisionmaker."  *Miglani*, 2018 WL 6265007, at *4.

16       Count One is impermissibly extraterritorial and it fails to state a claim on which relief

17  can be granted.  On either ground, Count One should be dismissed.

18  **III.   THE COURT SHOULD DISMISS ALMEIDA'S STATE-LAW CLAIMS (COUNTS
         TWO AND THREE)**

19

20       As shown in Defendants' motion, if the Court dismisses Almeida's Dodd-Frank claim, it

21  should decline to exercise supplemental jurisdiction over his state claims and dismiss them too.

22  *See* 28 U.S.C. § 1367(c)(3).  Almeida never cites 28 U.S.C. § 1367(c)(3), much less does he try

23  to show why this Court should retain jurisdiction over any remaining state-law claims.

24       Almeida's two state-law claims—retaliation in violation of California Labor Code § 98.6

25  and retaliation in violation of California Labor Code § 1102.5—should be dismissed anyway.

26       **A.   Almeida's California Claims Are Impermissibly Extraterritorial**

27       Almeida's state-law claims, which involve employment decisions concerning a Brazilian

28  employee, are impermissibly extraterritorial.  MTD at 26–28.  To begin with, as with federal

laws, it is presumed that state statutes have no extraterritorial effect.  *Wood v. iGATE Techs., Inc.*, No. 15-cv-799, 2016 WL 3548410, at *5 (N.D. Cal. June 30, 2016) (citing *N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 95 (Cal. 1916)).  To rebut that presumption, a plaintiff must satisfy a two-part test similar to the one discussed above with respect to Dodd-Frank.

The California Supreme Court has expressly held that neither § 98.6 nor § 1102.5 "affirmative[ly] indicat[es]" that the California legislature intended their prohibitions to apply extraterritorially.  *Ward v. United Airlines, Inc.*, 466 P.3d 309, 317 (Cal. 2020).  Thus, "the presumption against extraterritoriality applies . . . in full force."  *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011).  Although Defendants argued as much in their motion, *see* MTD at 26–28, Almeida ignored the point, as he did with § 78u-6(h)'s statutory language.

As for the second question whether "the conduct which gives rise to liability . . . occur[red] in California," *Diamond Multimedia Sys., Inc. v. Superior Ct.*, 968 P.2d 539, 554 (Cal. 1999), Almeida asserts only that

> the Court has a series of alleged acts that occurred in the State of California, contracts entered in to in California (both with Digitron and Plaintiff's employment contracts), complaints made internally in California, and employment decisions made in California.  There is nothing "extraterritorial" about this case.  The California laws should apply to employer's conduct that occurred in the State of California.

Opp. at 13.  The Court need not evaluate where contracts were entered into, to whom Almeida might have made his internal complaints, or where non-specific "employment decisions" might have been made, because the Amended Complaint does not allege that any conduct giving rise to liability, *i.e.*, any purportedly *retaliatory actions*, occurred in *California*.  At the risk of repetition, any supposed retaliation occurred in Brazil, where Almeida's employment terminated, and Counts Two and Three should be dismissed as a result.

**B.     Counts Two and Three Must Be Dismissed for Failure to State a Claim**

Finally, Defendants demonstrated that the Amended Complaint fails to establish that he was retaliated against for purposes of § 98.6 or § 1102.5.  Almeida responded to none of

1    Defendants' arguments, other than to say that "California law is more encompassing." Opp. at

2    13. That is not enough.

3         Almeida's § 98.6 claim in Count Two requires making a "bona fide claim regarding a

4    right" under the jurisdiction of the Labor Commissioner. *Marx v. Storage Tech. Corp.*, Nos.

5    B178202, B182100, 2006 WL 3222499, at *9 (Cal. Ct. App. Nov. 8, 2006). Defendants showed

6    that the Amended Complaint failed to allege anything of the sort. MTD at 29. As with so many

7    other arguments, Almeida failed to respond.

8         Regarding Almeida's § 1102.5 claim in Count Three, the disclosure protected is one that

9    is made "to a government or law enforcement agency, where the employee has reasonable cause

10   to believe that the information discloses a violation of state or federal statute." *Nieves v. City of*

11   *Oakland*, No. A144592, 2016 WL 6879282, at *3 (Cal. Ct. App. Nov. 22, 2016) (quoting Cal.

12   Lab. Code § 1102.5). Defendants demonstrated that the Amended Complaint alleges no facts to

13   establish that Almeida reasonably believed the Digitron scheme was illegal under U.S. law.

14   MTD at 29. Almeida did not respond to this argument either.

15        Nor did Almeida respond to Defendants' arguments that the Amended Complaint fails to

16   allege that either Defendant subjected Almeida to an adverse employment action (given that he

17   offered to end his employment) or that a causal connection exists between any purported

18   protected activity and Almeida's alleged termination (because of either a lack of knowledge by

19   a relevant decisionmaker or a lack of temporal proximity). For any of these myriad reasons,

20   Counts Two and Three should be dismissed.

21   **IV.    THE COURT SHOULD DISMISS THE AMENDED COMPLAINT WITH**
             **PREJUDICE**

22

23        At the conclusion of his opposition brief, Almeida "requests the right to amend his

24   pleadings or dismiss these claims without prejudice" should the Court grant Defendants' motion

     to dismiss. Opp. at 16. The Court should decline this request and dismiss the Amended

25   Complaint with prejudice. The Court has discretion to dismiss without leave to amend. *Lopez*

26   *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), and may take into account the futility of the

27   amendment. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) (listing four

28

1 factors, including futility); *see also In re Tracht Gut, LLC*, 836 F.3d 1146, 1155 (9th Cir. 2016)

2 (affirming trial court's denial of motion for leave to amend because amendment would have

3 been futile).  In deciding whether to grant leave to amend, the court may consider whether

4 pleadings previously have been amended.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

5      Here, Almeida already amended his complaint once as of right.  When he amended his

6 complaint, Defendants had already filed their first motion to dismiss, which highlighted the

7 complaint's many deficiencies,  In the Amended Complaint, however, Almeida "parroted many

8 of the same insufficient allegations contained in his original complaint."  *Solis v. City of*

9 *Sunnyvale*, No. 20-cv-3912, 2020 WL 7353698, at *8 (N.D. Cal. Dec. 14, 2020).  Dismissal

10 with prejudice is warranted, because Almeida has "proved [himself] wholly unable to remedy

11 the defects in [his] pleadings."  *Jeanette Coquette Co. v. Hartford Fire Ins. Co.*, No. 93-cv-

12 4418, 1995 U.S. Dist. LEXIS 8324, at *12–13 (S.D.N.Y. June 19, 1995); *see also Solis*, 2020

13 WL 7353698, at *8 (denying motion to amend a second time because first amended complaint

14 failed to make further allegations to support a claim, such that "further leave to amend would be

15 futile").

16                                           **CONCLUSION**

17      For the foregoing reasons, the Defendants' motion to dismiss should be granted with

18 prejudice.

19

20

21

22

23

24

25

26

27

28

1  Dated:  June 4, 2021                    Respectfully submitted,

2

3                                          MILLER & CHEVALIER CHARTERED

   By    /s/  *Laura G. Ferguson*
4            Laura G. Ferguson (*pro hac vice*)
             Dawn E. Murphy-Johnson (*pro hac vice*)
5

6                                          OGLETREE DEAKINS

7  By    /s/   *Carolyn A. Knox*
             Carolyn A. Knox
8            Andrew M. Massara

9
   *Counsel for Defendants Western Digital Corporation and*
10 *Western Digital do Brasil Comércio e Distribuição de*
   *Produtos de Informática Ltda*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT