UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AIRTON AMORIM DE ALMEIDA,

Plaintiff,

v.

WESTERN DIGITAL CORPORATION, et al.,

Defendants.

Case No. 20-cv-04735-RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Western Digital Corporation ("WDC") is a California corporation headquartered in San Jose. Defendant Western Digital Do Brasil Comercio E Distribuicao De Produtos De Informatica Ltda ("WD Brazil") is a Brazil entity that is wholly owned and operated by WDC. Plaintiff Airton Amorim De Almeida is a citizen and resident of Brazil who alleges WDC and WD Brazil were his "joint employers" and that he served as the "Latin America Finance Director" for the two entities. Almeida asserts he was "hired directly by WDC" and that he reported to a WDC vice president based in California.

In this action, Almeida brings claims under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 and state law contending he suffered adverse employment actions, and eventually termination, in retaliation for his alleged "whistleblowing" activities. WD Brazil moves to dismiss for lack of personal jurisdiction over it. WDC and WD Brazil both move to dismiss the claim under Dodd-Frank on grounds that the statute has no extraterritorial reach.

WDC and WD Brazil also jointly urge the court to decline to exercise jurisdiction over the state law claims, or to dismiss them as well for failure to state a claim. In response, Almeida insists the relationship between defendants supports jurisdiction over WD Brazil in this district and that the alleged Dodd-Frank violations should be seen as having taken place in California. Because those arguments are not persuasive, the motion to dismiss will be granted.

## II.  BACKGROUND[1]

As noted, Almeida is a Brazilian citizen and resident who was employed in Brazil, according to him, by both defendants. Although Almeida alleges he was to report directly to WDC Vice President of Finance Joseph Carrillo, who is based in California, other allegations in the complaint reveal he was supervised by Senior Director Graham Holmes. The complaint and Almeida's briefing are conspicuously silent as to where Holmes is based.

Almeida was hired in February of 2012. Sometime in the early part of that year he became concerned about a contract that WDC had entered into with a company called Digitron, "Defendants' Manufacturing Contractor in Brazil for assembling and selling Defendants' Hard Disk Drives." Almeida believed Digitron might be "defrauding and/or bribing the Brazilian tax authority to overlook misrepresentations relating to finances," thereby putting WDC and WD Brazil at risk.

On June 6, 2016—more than four years after becoming concerned about Digitron's alleged misconduct and defendants' possible complicity therein—Almeida allegedly sent an anonymous email to WDC executives, warning, "[t]he issues I am raising in this notification are very serious for WD because if Digitron is found to be non-compliant for the PPB tax program, then WD's potential exposure to the Brazilian government and [Original Equipment Manufacturers] could be massive."

Without elaboration, Almeida also alleges that, "[a]t all times material," he made

---

[1] The facts and quotations in this section are taken from the amended complaint.

CASE NO. 20-cv-04735-RS

2

"multiple internal complaints relating to his concerns," including to Joseph Carrillo. The complaint does not indicate whether Almeida's internal complaints also were anonymous, whether they alleged any wrongdoing by WDC or WD Brazil, or what response Almeida received, other than that Carrillo "took no reasonable or immediate action."

Ten days after sending his anonymous email, Almeida submitted a Tip, Complaint, or Referral ("TCR") to the Securities and Exchange Commission that incorporated and was based on his internal complaints related to defendants' dealings with Digitron. According to the complaint, in October of 2016, "the SEC notified Defendants that a TCR had been filed against them and that the SEC was launching an investigation . . . ." There are no further allegations regarding any response by the SEC to the TCR. Almeida also claims he provided the TCR to the Foreign Corrupt Practices Act Unit at the U.S. Department of Justice, but the complaint does not allege the unit responded.

Meanwhile, in July of 2016, defendants began investigating Almeida's anonymous email regarding Digitron. According to the complaint, defendants hired the Gibson Dunn law firm, allegedly based in Irvine, California, to conduct the investigation, which "was handled by Defendants' United States offices, by United States citizens, based in California."

As part of the internal investigation, WDC sent representatives from the United States to Brazil to interview Almeida and three other employees. Almeida alleges that of the approximately 15 employees working in Brazil, he was the only one "with the exposure and knowledge to submit the facts outlined in the anonymous e-mail," and that he was interviewed for three hours, which was far longer than the other interviews lasted. Based on this, the complaint asserts defendants had actual and/or constructive knowledge that Almeida was the whistleblower.

The complaint does not allege any relevant events between November of 2016, when the interviews took place, and September of 2017, when Almeida was duped into participating in a phishing scam. In response to a fraudulent email, Almeida wired WD Brazil funds to a "third-party supplier" in Turkey. As a result, "[d]efendants were defrauded approximately $2 million."

While defendants were investigating the phishing scam, Almeida began suggesting how they should respond. Almeida emailed his supervisor Graham Holmes that "[d]efendants needed to report this fraud to the Central Bank of Brazil and the Brazilian Police." In October of 2017, Almeida emailed "Defendants' Board of Directors and other high-ranking officials . . . imploring them to make the appropriate reports to Brazilian authorities." In early November 2017, Almeida "demanded Defendants' investigative team notify the Brazilian authorities that a financial fraud occurred."

After the phishing scam, Almeida's work computer was confiscated by the investigation team. Almeida alleges that Holmes stripped him of his key duties, including responsibility for "reviewing and facilitating payment requests." According to the complaint, compared to other employees who had fallen victim to phishing scams, Almeida "was treated harsher and had his duties stripped away from him immediately."

At the end of November of 2017, "having been demoted by Defendants . . . [and] treated like a criminal in the wake of [the] phishing scam," Almeida "contemplated resignation." Almeida then approached Holmes about resigning. In early December, the two met to discuss what Almeida characterizes as his "speculative resignation" and his "decision to leave the company." A week later, however, Almeida allegedly told Holmes that he had reconsidered and decided to stay, but Holmes was not receptive. On December 15, 2017, Holmes purportedly told Almeida that "[d]efendants—specifically WDC agents in the United States—had 'no interest' keeping [Almeida] as an employee," and offered him a "Mutual Agreement" on behalf of "all Defendants." According to Almeida, "[t]hus, on December 15, 2017, Defendants actually terminated Plaintiff."

### III.  LEGAL STANDARD

Rule 12(b)(2)

WD Brazil seeks dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Where, as here, there is no federal statute applicable to determine personal jurisdiction, a district court applies the personal jurisdiction law of the state where the

federal court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *See id*. at 800-01. Personal jurisdiction over a defendant that does not reside in the forum state may be exercised consistent with due process if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014) (outlining the distinction between the two forms of jurisdiction).

If personal jurisdiction is challenged, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *See Schwarzenegger*, 374 F.3d at 800. When the motion is based on written materials rather than an evidentiary hearing, however, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss. *See id*. While a district court's jurisdictional analysis must consider plaintiffs' uncontroverted allegations to be true, a plaintiff may not simply rest on the "bare allegations of the complaint[.]" *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citation omitted).

Rule 12(b)(6)

Both defendants seek dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The determination is a context-

specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

IV.  DISCUSSION

A.  Personal jurisdiction over WD Brazil

By Almeida's own allegations, WD Brazil is a "foreign corporation duly existing by the virtue and laws of the country of Brazil." Almeida makes *no* allegations or arguments that WD Brazil has *any* jurisdictional contacts of its own with California, much less the continuous and systematic presence in the state necessary to give rise to general jurisdiction or even the "minimum contacts" that might support specific jurisdiction. Instead, Almeida asserts that "[i]In essence, WD-Brazil operates as a satellite office for WDC." Almeida argues "[t]here is no discernable difference between the two entities as leadership, decision making, and meaningful business for both entities all occur within this Court's jurisdiction" and concludes that either general jurisdiction or specific jurisdiction over WD-Brazil is appropriate.

Almeida's arguments border on frivolous, in light of *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) a case cited in defendants' motion, but ignored in Almeida's opposition. In *Ranza*, a former employee of Nike European Operations Netherlands, B.V. (NEON), sued NEON and its U.S. parent company, Nike, Inc. in the District of Oregon for employment discrimination that allegedly took place in the Netherlands. *Id.* at 1065. The Ninth Circuit upheld the dismissal of NEON for lack of personal jurisdiction, observing, "[t]he existence of a parent-subsidiary relationship is

insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Id.* at 1070. Rather, to extend jurisdiction to a foreign affiliate, a showing of alter ego must be made. *Id.* at 1073.

"To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* (quotations and citations omitted).

A plaintiff does not meet the "unity of interest and ownership" prong when the evidence shows only an active parent corporation involved directly in decision-making about its subsidiaries, but each entity observes all of the corporate formalities necessary to maintain corporate separateness. *Id.* The *Ranza* plaintiff presented no evidence that Nike and NEON failed to observe their respective corporate formalities, and there was evidence that each entity leased its own facilities, maintained its own accounting books and records, entered into contracts on its own and paid its own taxes, among other things. *Id.* at 1074.

Here, Almeida's conclusory and generalized assertions that the two entities are effectively one do not come close to satisfying his burden, particularly given his allegation that WD Brazil is a "foreign corporation *duly existing* by the virtue and laws of the country of Brazil." (Emphasis added.) There is no basis for personal jurisdiction over WD Brazil, and its motion to dismiss must be granted, independent of the further arguments it presents jointly with WDC.

B. <u>Failure to state a claim</u>

Almeida's sole federal claim for relief invokes Dodd-Frank's anti-retaliation provision, 15 U.S.C. § 78u-6. That provision, however, does not apply to alleged retaliatory conduct that takes place overseas. *Liu Meng-Lin v. Siemens AG*, 763 F.3d 175 (2d Cir. 2014). Almeida does not contend otherwise. Instead, he attempts to characterize the wrongful acts of which he complains as having taken place in California.

1    Almeida argues *Liu Meng-Lin* is distinguishable. To be sure, that case presented an even more extreme example of an attempt to apply Frank-Dodd to extraterritorial conduct. As the court summarized:

> We have no occasion here to define the precise boundary between domestic and extraterritorial application of this relevant provision, or to delineate the types of contacts within the United States that would render an application of the statute domestic rather than extraterritorial because this case is extraterritorial by any reasonable definition. Liu is a resident of Taiwan employed by the Chinese subsidiary of a German company; he reported to superiors in China and Germany regarding allegedly corrupt activities that took place in China, North Korea, and Hong Kong; and his employers decided, apparently in China and/or Germany, to terminate his employment. In short, the whistleblower, his employer, and the other entities involved in the alleged wrongdoing are all foreigners based abroad, and the whistleblowing, the alleged corrupt activity, and the retaliation all occurred abroad. The facts alleged in the complaint reveal essentially no contact with the United States regarding either the wrongdoing or the protected activity.

763 F.3d at 179.

Here, Almeida similarly was a resident of a foreign country employed by a foreign company, although he insists he was "jointly" employed by that company's U.S. parent. The allegedly corrupt activities likewise took place in the foreign country, notwithstanding Almeida's vague suggestion that the U.S. parent participated in the wrongdoing through it supposed total control of its Brazilian subsidiary.

Almeida allegedly reported the wrongdoing to U.S.-based executives of the parent company, and he does allege that the decision to terminate his employment was made at the level of the parent company in the U.S. Nevertheless, the allegedly corrupt activity, Almeida's conduct in undertaking the alleged "whistleblowing," and the acts constituting the alleged adverse employment actions prior to and continuing to the termination itself, all took place in Brazil. Almeida suffered the alleged harms in Brazil. Imposing liability for that conduct and damages for that harm under § 78u-6 would constitute an impermissible extraterritorial application of the statute.

Even if the claim could be construed as directed at alleged domestic wrongdoing, Almeida has failed to allege sufficient facts to give rise to a plausible inference that he suffered adverse employment actions in retaliation for whistleblowing. The temporal disconnect between the alleged whistleblowing and the alleged acts of retaliation, and the close proximity in time between those acts and Almeida's involvement in the alleged phishing scam undermines any inferences that might otherwise be reasonably drawn. Accordingly, the motion to dismiss must be granted.[2]

At the hearing, Almeida effectively conceded he has no additional facts to offer in any amendment with respect to personal jurisdiction. Nor does it appear that the extraterritoriality issue is one that could be addressed through amendment. Finally, while in theory an inference of retaliation could be buttressed by additional factual allegations, Almeida has not suggested he actually possesses any additional relevant facts, or that he could amend on this point. Accordingly, leave to amend will not be granted.

## V. CONCLUSION

The motion to dismiss is granted, without leave to amend as to the federal claim. The Court declines to exercise jurisdiction over the state law claims, which are therefore dismissed without prejudice to refiling in state court.

**IT IS SO ORDERED**.

Dated: June 25, 2021

RICHARD SEEBORG
Chief United States District Judge

---

[2] In light of this conclusion, there is no occasion to reach defendants' additional argument that the complaint does not adequately allege whistleblowing in connection with an alleged securities law violation.